101 So.2d 887 (1958)
Frank FREEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 314.
District Court of Appeal of Florida. Second District.
April 11, 1958.
*888 Joseph A. Varon, Hollywood, for appellant.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee
KANNER, Chief Judge.
The appellant, Frank Freeman, was charged with the offense of second degree murder of one Raymond Chance by shooting him with a shotgun, as a result of which Raymond Chance died. The jury found appellant guilty of the offense of manslaughter, and he was sentenced to the state prison for a period of fifteen years. From this judgment and sentence this appeal has been instituted.
The prime attack is whether or not the state established the corpus delicti.
The term "corpus delicti" connotes the body of the offense, or, otherwise stated, the substance of the crime. 26 Am.Jur. section 6, p. 159. As applied to homicide cases in the Florida jurisdiction, the corpus delicti consists of three essential ingredients: (1) the fact of death, (2) the existence of the criminal agency of another person as the cause of death, and (3) the identity of the deceased. Hulst v. State, 1936, 123 Fla. 315, 166 So. 828; Deiterle v. State, 1931, 101 Fla. 79, 134 So. 42; and Lee v. State, 1928, 96 Fla. 59, 117 So. 699.
The corpus delicti may be established either by direct or circumstantial evidence. When circumstantial evidence is resorted to, the proof must be the most convincing, satisfactory, and unequivocal proof that is compatible with the nature of the case. Regardless of whether the evidence is direct or circumstantial, the proof of the component elements of the corpus delicti must be established beyond a reasonable doubt. See the three preceding cited cases.
Appellant urges as support for reversal that the evidence fails to establish the fundamental ingredients of the corpus delicti in that it does not appear the alleged decedent was dead, that no identity of the alleged body was made by any doctor or coroner, that no death certificate was offered, that no coroner or medical examiner or doctor, police officer or lay person testified as to the cause of the death of the decedent, if there was a death, and that there is not a scintilla of testimony concerning a wound upon the body of the alleged deceased.
Adverting to the three elements necessary to establish the corpus delicti, the state offered the testimony of two eye witnesses to the homicide. Speaking of appellant as the person who fired the fatal shot, K. Butler testified, pp. 16, 17, transcript of record:
"Q. Then what did he do? A. He shot.
"Q. Who shot? A. That man right there.
"Q. Shot who? A. He shot Raymond.
"Q. How many times? A. One time.
"Q. And what happened then, if anything? A. Both of them took off, he took off running, and Raymond right behind him, then he run out to 4th Avenue, and he went down 4th Avenue about 15 yards, and Raymond fell dead.

*889 "Q. Raymond fell dead? A. That's right.

"Q. You saw the shooting occur? A. I saw when he shot him, he was right at me when he shot him." (Emphasis supplied)
Then to counsel for appellant's questions on cross-examination, p. 19, transcript of record, Butler further testified:
"Q. Now let me ask you something, when you saw Raymond Chance fall dead, did you call the police? A. No.
"Q. What did you do? A. I didn't done anything, but walk out there where he was." (Emphasis supplied)
Testimony of Arthur Edwards, another state eye witness, relative to the shooting and death of Raymond Chance, the victim, appears on page 29 of the transcript of record:
"A. I stood there in the road where I was until Raymond Chance fell, when he fell I walked back there, I didn't go exactly up to him, I went close enough to see that he was dead, then I turned and come back into the alley, when I got back in the alley I saw the thumb off his left hand, shot off, laying up against that rack where the garbage cans was." (Emphasis supplied)
The quoted testimony adequately establishes that Raymond Chance, the victim named in the information, died as a result of a gunshot fired by the appellant. The testimony of the two eye witnesses, as well as testimony of other witnesses contained in the record, proves the identity of the deceased, Raymond Chance as well as the identity of appellant; and testimony of appellant himself is that he had known Raymond Chance. Appellant admitted that he fired the shotgun while he and the deceased were engaged in an altercation. The shooting occurred in broad daylight sometime in the morning. Appellant fired a single shot from his shotgun at the time the deceased and the appellant were in close proximity to each other. There was the testimony that the thumb of the deceased was shot off and was found lying at the scene of the shooting; also a deputy sheriff making an examination of the area found blood in the road in the area of the scene of the shooting. Another deputy sheriff who investigated the shooting shortly after it happened found Raymond Chance lying on the ground with one of his fingers in the road nearby.
In the case of Nelson v. State of Florida, per curiam decision without opinion by the Supreme Court, Fla. 1957, 96 So.2d 423, an examination of the record reveals that the proof adduced was markedly similar to that in the instant case. In the Nelson case there was only one eye witness to the killing other than appellant. No testimony was given in the Nelson case as contended by appellant here as being necessary to establish the corpus delicti: that is, no identity of the body was made by a doctor or coroner, no death certificate was offered, no coroner nor medical examiner or doctor, police officer, or lay person gave testimony as to the cause of the death nor testimony concerning any wound upon the body of the deceased.
To conclude the corpus delicti phase, the evidence discloses that Raymond Chance, the victim, was dead, that his death resulted at the hands of the appellant Frank Freeman from the use of violent and criminal means in his firing of a shotgun. The evidence was adequate to meet the test required to establish the corpus delicti.
Since we have determined that the corpus delicti had been satisfactorily established, we then have only to consider whether the state maintained the necessary burden of proof to convict the appellant of manslaughter beyond and to the exclusion of a reasonable doubt. It *890 is not necessary to delineate the evidence. There was an altercation between the appellant and the deceased; the evidence was sufficient for the case to be submitted to the jury for determination under the charge laid in the information. The court adequately instructed the jury as applied to the offenses embraced within the information and as to the evidence offered on behalf of the state and the appellant. Appellant, along with other contentions made by him in his defense, also interposed the plea of self-defense. The court adequately charged the jury on this phase.
It may also be observed that there was substantial evidence of flight by appellant. Appellant had been living in the community of Dania, Broward County, Florida, before and at the time of the killing, and testimony of witnesses was that he was well known and regularly seen there, that immediately after the shooting he was no longer seen, and that the authorities carried on a search for his apprehension from the time of the shooting on June 12, 1954, until the early part of the year 1957, when he was apprehended in the City of Augusta, Georgia, a period of about three years having intervened. Appellant's excuse for his fleeing was that he was afraid of Raymond Chance, not knowing whether he was dead, and that during the period of time following his departure from Dania, he did not communicate with any of his family. See Gray v. State, 1900, 42 Fla. 174, 28 So. 53.
So it is, "The flight of a person accused of crime raises no presumption of guilt, but is a circumstance that goes to the jury, to be considered by them with all the other testimony and circumstances, and given such weight as the jury may determine it entitled to. The rule is that, when a suspected person in any manner endeavors to escape, or evade a threatened prosecution by flight, concealment, resistance to a lawful arrest, or other ex post facto indication of a desire to evade prosecution, such fact may be shown in evidence as one of a series of circumstances from which guilt may be inferred." Blackwell v. State, 1920, 79 Fla. 709, 86 So. 224, 226, 15 A.L.R. 465.
Finally, the evidence was ample to support the determination by the jury that appellant was guilty of manslaughter. Hence, the judgment of the trial court is affirmed.
Affirmed.
SHANNON, Judge, and BIRD, JOHN U., Associate Judge, concur.