HENDRY, Chief Judge.
Pablo H. LaSalle, an illiterate Puerto Rican migrant farm laborer, was charged in an information for second degree murder with the killing of one Juan Morales Lebrón by stabbing him with a knife. He entered a plea of not guilty and was tried by a jury and found guilty as charged. The court entered judgment finding the defendant guilty of murder in the second degree and sentenced him to thirty years in the State Penitentiary.
Motion for a new trial was timely filed and was denied. This appeal brings up for review the judgment of conviction and sentence.
The record reveals that on the night of April S, 1964, a man suffering from a stab wound in the back was taken from a bar near Perrine to a hospital by one Angel Quinoes who had known the wounded man by sight for many years. He was not certain of his name but was told by a cousin of the wounded man that it was Juan Morales Lebrón. The wound proved fatal and the next day an Assistant Medical Examiner for Dade County performed an autopsy and found the stab wound to be the cause of death and that the wound was inflicted by a blade or a pointed object of some kind.
During the evening of April 6, the Supervisor of the Homicide Squad of the Dade County Sheriff’s office went to the Perrine substation where he observed an Oldsmobile with blood on the back seat. He then, went to the Last Chance Bar where the alleged stabbing took place. Acting upon information received there he proceeded to-Oscar King’s Bar which was directly north-of the Last Chance Bar. There he observed what appeared to be blood on the-front of the building. He next went to a. one bedroom apartment on 176th Street. His findings at these places prompted him-to put out a teletype message to Fort Myers and the west coast area to be on the-lookout for a 1949 or 1950 model white-Oldsmobile in bad condition supposedly being driven by appellant, Pablo H. LaSalle, alias Tony, as he was wanted in Dade-County for killing a man.
A Fort Myers police officer observed a car, being driven in that city, that matched' the description given in the dispatch. Whereupon the car was stopped and the-driver was asked to show his driver’s license. A New Jersey license issued to-Pablo H. LaSalle was produced. The officer had to communicate with the defendant through an interpreter, another illiterate Puerto Rican migrant farm laborer who-was riding with the defendant; the defendant having made it appear to the officer that he spoke and understood only-Spanish. After questioning the defendant, through the interpreter, he was charged with operating a motor vehicle with an improper license and taken to the Fort Myers jail where he was turned over to two other police officers. They questioned him as-to whether he was Pablo H. LaSalle and advised him of his right to obtain a lawyer and to remain silent. The defendant denied that he was Pablo H. LaSalle and stated he lived in Palmetto, not Miami. During this portion of the examination the officers- and the defendant spoke English.
Later, about 8:30 P.M. two detectives-from Miami arrived and the examination- *409 was resumed with the. aid of an interpreter. The defendant was shown a knife that they had taken from the glove compartment of his car. The interpreter testified that he admitted that the knife belonged to him and that he had killed a man in Homestead by stabbing him in the back after an argument over a girl.
The next morning the Miami detectives picked the defendant up from the Fort Myers jail and transferred him to the Dade County jail where he was again interrogated with the aid of an interpreter for about forty-five minutes. The interpreter testified that the defendant stated during this interrogation that he cut a man named "Johnny” with a knife because Johnny had laughed at him and was with his girl friend.
Appellant’s first point on appeal is whether the state established a prima facie case of second degree murder against the ■defendant. It is appellant’s contention that the state failed to establish a corpus delicti ■of the crime of second degree murder against the defendant.
The term “corpus delicti” connotes the body of the offense, or otherwise stated the substance of the crime.
The law is well settled that in order to •establish the corpus delicti in a homicide •case, it is necessary to prove three elements: first, the fact of death; second, the criminal agency of another person as a cause thereof; third, the identity of the deceased person.[1]
Appellant argues that the evidence was insufficient to support a conviction. He • contends that there must be proof of the corpus delicti independent of his confession.
It is true that before a confession should be received in evidence there must be some independent proof of the corpus delicti.[2] There should at least be some additional substantial evidence either direct or circumstantial before the jury should be permitted to consider any admission or confession of the defendant.[3]
From the facts revealed by the record, we feel that the court, whose province it was to determine the sufficiency of the proof of the corpus delicti, was entitled to find the necessary prima facie existence of the corpus delicti.
The appellant also asserts various reasons why the defendant’s statements made to the police should be inadmissible in evidence. We have carefully reviewed each assertion and find no reversible error.
Accordingly the judgment and sentence appealed is affirmed.
Affirmed.

. Jefferson v. State, Fla.1961, 128 So.2d 132.

. Parrish v. State, 90 Fla. 25, 105 So. 130 (1925); Keir v. State, 152 Fla. 389, 11 So.2d 886 (1943).

. Tucker v. State, 64 Fla. 518, 59 So. 941 (1912); Freeman v. State, Fla.App.1958, 101 So.2d 887.