217 So.2d 567 (1968)
STATE of Florida, Petitioner,
v.
Robert E. YOUNG, Respondent.
No. 36957.
Supreme Court of Florida.
December 10, 1968.
*568 Earl Faircloth, Atty. Gen., and James M. Adams, Asst. Atty. Gen., for petitioner.
Engel & Pollack and Jack J. Taffer, Miami, for respondent.
ROBERTS, Justice.
We here review on direct conflict certiorari a decision of the District Court of Appeal, Fourth District, in Young v. State, Fla.App. 1967, 203 So.2d 650. The decision is in direct conflict on the same point of law with McClain v. State, Fla. App. 1966, 185 So.2d 707, and a long line of decisions of this court upon which the decision in McClain was based. Hence we have jurisdiction under Section 4(2) of Article V, Constitution of Florida, F.S.A.
The point of law upon which the case turned in the appellate court has to do with the propriety of the trial judge's charge to the jury respecting the evidence of possession of recently stolen goods. The facts of the case from which the point of law evolved are as follows:
The defendant, respondent here, was informed against and tried on a charge of breaking and entering with intent to steal. Some of the stolen property was on the seat of the car in which he was riding at the time of his arrest  in fact, it was the presence of the stolen property in the automobile, which had been observed parked near the burglarized premises, which led to the arrest of the defendant and his accomplice. More of the stolen goods were found in the trunk of the automobile. The defendant was interrogated later at the police station by the investigating officer in the presence of the owner of the burglarized premises and the stolen goods. During the interrogation the owner identified a gold wrist watch the defendant was wearing as being part of the stolen goods. After answering a few routine questions as to his identity and the like  falsely, as it turned out later  the defendant stated that he did not want to answer any more questions, whereupon the interrogation ceased. So far as is shown by the record, the accused made no other statements whatsoever to the police, either exculpatory or incriminating, prior to the trial. At the trial he did not take the stand nor adduce any other evidence in his own defense. The jury returned a verdict of guilty.
On appeal, the Fourth District Court of Appeal reversed and remanded the cause for a new trial on the sole ground that the judge's charge to the jury respecting the possession of recently stolen goods was contrary to the decision of the United States Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, decided in June 1966 just prior to the trial of the case sub judice. The charge to the jury on this phase of the case was in two parts, one of which was taken verbatim from McClain v. State, supra, 185 So.2d 707, *569 cert. den. Fla., 192 So.2d 498. The jury was charged, in effect, that the unexplained possession of goods recently stolen from a building that has been broken into and entered may warrant the inference that the possessor not only stole the goods but also broke and entered the building with intent to steal. The judge also charged, in the exact language approved in McClain, that
"* * * the guilt of the accused doesn't follow as a presumption of law from the unexplained possession of the property stolen. The presumption of guilt in such a case is one which you may infer as a matter of fact which you, the jury, are the sole judges of, and it is another circumstance which you may consider in connection with all the other facts and circumstances in the case which you believe to be true."
In holding that these charges constituted reversible error the appellate court relied on a footnote in the case of Miranda v. State of Arizona, supra, 86 S.Ct. 1602, reading as follows:
"* * * In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."
The appellate court was of the opinion that the trial judge's charge to the jury had the effect of requiring the defendant to explain his possession of the recently stolen goods, under penalty of an inference of guilt if he failed to do so, even though he had claimed his Fifth Amendment privilege to remain silent. Opining that "[t]he privilege to remain silent would be a hollow privilege if that silence would create an inference of guilt at the trial," the court reversed and remanded. We have the view that the appellate court's decision is unwarranted and should be quashed for the reasons hereafter stated.
The facts of the instant case have no similarity whatsoever to those in the cases before the court in the decision styled Miranda v. State of Arizona. The immediate question before the court in Miranda was the admissibility of the self-incriminating statements of the accused persons, all of which were made in circumstances that, to quote that Court, "shared salient features  incommunicado interrogation of individuals in a police-dominated atmosphere, resulting in self-incriminating statements without full warnings of constitutional rights." 86 S.Ct. at page 1612. The constitutional question was whether to extend the Fifth Amendment privilege to custodial investigations. 86 S.Ct. at page 1620. In concluding that it was applicable to such investigations and that the statements were inadmissible, the court summarized its holding as follows:
"The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 86 S.Ct. at page 1612.
The court also delineated the procedural safeguards that it would consider effective: warning the accused that he may remain silent, that anything he said could be used against him, and advising him of his right to have an attorney, either retained or court-appointed; and stated that the presence of an attorney during the custodial interrogation would satisfy the procedural-safeguard requirements. 86 S.Ct. at page 1623.
It was in this context that the United States Supreme Court made the statement in the footnote quoted above. Since the court was concerned with the question of whether Fifth Amendment protection against self-incrimination should be accorded the accused in custodial interrogation as well as in judicial proceedings, the dictum in the footnote could logically have been intended only to proscribe comment on the accused's "taking the Fifth" during a custodial interrogation as well as in a judicial proceeding. We find nothing in the *570 record here to show, nor is it contended, that the prosecuting attorney commented either directly or indirectly on the fact that the defendant declined to answer the questions of the interrogating officer during the custodial interrogation; and there was, of course, no comment as to his failure to take the stand. Nor do we construe the judge's charge to the jury, supra, as being a comment on the fact that defendant claimed his Fifth Amendment privilege during custodial interrogation.
In holding, apparently, that it was such an unauthorized comment  or, in any event, that the charge was reversible error under the dictum in Miranda  the appellate court took the position that the instruction in question is based on the theory that the inference of guilt derives from the failure to explain the possession of goods recently stolen; that the charge, in effect, requires the accused to give an affirmative explanation of his possession or else suffer an inference of guilt; and that, at the same time, he has a Fifth Amendment privilege to remain silent. The court concluded that the Fifth Amendment privilege took precedence over the duty to explain so that the accused's "failure to explain possession of stolen goods could not thereafter create an inference of guilt at his trial." 203 So.2d at page 652.
The appellate court is obviously under a misapprehension as to the rule of evidence respecting unexplained possession of recently stolen goods. The rule does not create a presumption of law, under which the burden is shifted to the accused to produce evidence to rebut the legal presumption of the existence of the operative facts. It is simply a rule relating to circumstantial evidence from which the jury has the right to infer guilt of larceny or of breaking and entering with intent to steal. This was made very clear in one of the earliest cases adopting the rule. See Young v. State, 1888, 24 Fla. 147, 3 So. 881.
Moreover, the inference of guilt that the jury may infer from the unexplained possession of recently stolen goods does not arise from the possessor's failure to explain or demonstrate by evidence of exculpatory facts and circumstances that his possession of the recently stolen goods is innocent. It is the fact of possession that provides the basis for the inference of guilt. This inference is founded on
"* * * the manifest reason that when goods have been taken from one person, and are quickly thereafter found in the possession of another, there is a strong probability that they were taken by the latter." Williams v. State, 1898, 40 Fla. 480, 25 So. 143.
The fact that the accused does not come forward at his earliest opportunity and explain his possession is an additional circumstance from which the jury may draw an inference of guilt, the basis for this inference being
"* * * the obvious consideration that, if the possession was lawfully acquired, the party would be able, at least shortly after its acquisition, to give an account of the manner in which such possession was obtained." State v. Hodge, 50 N.H. 510, cited with approval in Tilly v. State, 1885, 21 Fla. 242.
There is, however, no mandatory duty to explain possession of the goods. The accused may explain his possession at the appropriate time, but he is not required to do so. Ard v. State, Fla. 1959, 108 So.2d 38. Even if he does come forward with an explanation, the jury is not required to believe it. As stated in Leslie v. State, 1895, 35 Fla. 171, 17 So. 555,
"The account given may be reasonable and highly plausible, and yet the jury may not believe a word of it to be true. In the latter case they would have the right to convict upon the evidence furnished by the possession of the stolen goods alone, even though the state had not put in any proof directly to prove the falsity of the account given."
Accord: Collier v. State, 1908, 55 Fla. 7, 45 So. 752; McDonald v. State, 1908, 56 Fla. 74, 47 So. 485; Bargesser v. State, 1928, 95 Fla. 401, 116 So. 11; Ferguson v. State, 1946, 157 Fla. 324, 25 So.2d 799.
*571 It can be seen, therefore, that the rule of evidence respecting possession of recently stolen goods is no different, in kind, from the rule respecting the probative value of any other circumstantial evidence. Flight, concealment, resistance to a lawful arrest, presence at the scene of the crime, incriminating fingerprints  the whole body of circumstantial evidence relevant in a given case  are all incriminating circumstances which the jury may consider as tending to show guilt if evidence thereof is allowed to go to the jury unexplained or unrebutted by evidence of exculpatory facts and circumstances. See Blackwell v. State, 1920, 79 Fla. 709, 86 So. 224, 15 A.L.R. 465.
Some circumstantial evidence  e.g., flight or concealment  is not sufficient, standing alone, to warrant the jury in returning a verdict of guilty. See Freeman v. State, Fla.App. 1958, 101 So.2d 887, relying on Blackwell v. State, supra, 86 So. 224, 226. In the case of possession of recently stolen goods, however, the inference that the possessor is the guilty taker is so strong that the rules of evidence permit the jury to return a verdict of guilty on this one circumstance alone if the defendant allows it to go to the jury either unexplained or with an explanation that is so palpably unreasonable and incredible that the jury rejects it entirely. Leslie v. State, supra, 17 So. 555. This is not a rule of recent vintage. As pointed out in the decision here reviewed, it was developed, from the reason and experience and common understanding of men, as a part of the common law of England, Regina v. Langmead, 169 Eng.Repr. 1459, from which we derived it.
Since the appellate court's decision was premised on the erroneous assumptions that the jury instruction in question demanded that the defendant explain his possession of the stolen goods and required the jury to return a verdict of guilty if he failed to do so, its conclusion must fall with its premises. Whether such assumptions, if true, would bring the jury instruction into collision with the footnote in Miranda is not decided, since it is unnecessary.
It suffices to say that we find nothing in the Miranda footnote that appears to be intended to prohibit a jury instruction as to the inferences that the jury may draw from circumstances in evidence before it. The rule of evidence in question has come down to us from the common law, has stood the test of long experience in state and federal courts in this country, and serves a useful, if not vital, function in prosecutions for larceny and burglary. The role of the Fifth Amendment in guaranteeing an individual's right to remain silent has come a long way since its origin as "a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons * * *" Miranda, supra, 86 S.Ct. at page 1611. And it may be that, by some legerdemain that we cannot now conceive of, the United States Supreme Court will in the future find that an individual's right to remain silent has been invaded by a jury instruction concerning the inferences that may be drawn by the jury from circumstantial evidence, such as the unexplained possession of recently stolen goods  or even by an instruction based on an unrebutted presumption of law mandated by statute or evidentiary rule. But we think that such an extension of the Fifth Amendment would be, as it should be, made by the court only in a case in which the facts justify the use of such a jury instruction so that the court may delineate the "procedural safeguards" (as it did in Miranda), or a re-phrasing of the instruction, that might permit its use in a proper case. Until then, it is our view that state courts should continue to adhere to the long established evidentiary rule in question.
For the reasons stated, the decision here reviewed should be and it is hereby quashed, and the cause remanded for further proceedings not inconsistent with this opinion.
CALDWELL, C.J., and THOMAS and ADAMS (Ret.), JJ., concur.
*572 THORNAL, J., dissents with opinion.
DREW and ERVIN, JJ., dissent and concur with THORNAL, J.
THORNAL, Justice (dissenting).
I have the view that the majority today overlooks a rare opportunity to employ one of these so-called "newly recognized constitutional protections" as a usable instrument in the adversary truth-seeking mechanism.
We have long adhered to the rule that an explained possession of recently stolen property permits a factual inference of guilt of the larceny. This has been construed to mean a failure to explain when the accused first comes under a duty to speak. It could not be interpreted to require a defendant to testify at his trial. Ard v. State, 108 So.2d 38 (Fla. 1959); Romanello v. State, 160 So.2d 529 (Fla. App.) (1st Dist.Ct.App.Fla. 1964).
The majority adheres to the old rule that permits a factual inference of guilt only from the unexplained possession of recently stolen property. I would hold that under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the burden of speaking or "explaining" anything has certainly been lifted from the shoulders of the "in-custody" accused. I think this should be recognized but in so doing I would announce a logical new rule of evidence to the effect that any possession of recently stolen property would support an inference of guilt. In short, I would no longer require an unexplained possession to support the inference. Any need to speak has been eliminated by Miranda. I would now simply hold that any possession will support the inference.
The sweep of Miranda comprehends the proposition that an individual under police custodial interrogation cannot be penalized for asserting his Fifth Amendment privilege to remain silent. At the trial the prosecution may not exploit the fact that he stood mute or claimed his privilege in the face of accusation. Miranda, supra, at 468, n. 37, 86 S.Ct. 1602.
The basic premise of Miranda briefly is that when exposed to "in-custody" interrogation a suspect has a right to remain silent and must be warned of the right prior to questioning. Other aspects of the rule are not of significant relevance to our present discussion. See, Miranda, supra, at 444 and 479, 86 S.Ct. 1602.
The Fourth District Court here accurately diagnosed the impact of Miranda on the so-called "rule of unexplained possession" of recently stolen property. Under that rule the right to remain silent is exposed to the hazards of a factual inference of guilt precipitated by the failure to explain. As the Court below stated, "The privilege to remain silent would be a hollow privilege if that silence would create an inference of guilt at the trial". A duty to explain is simply inconsistent with a right to remain silent. The inference of guilt from the failure to explain is an aspect of proof that succumbs when it collides with the insurmountable barriers of constitutionally protected privileges.
I would here hold that possession of recently stolen property can be considered as evidence of guilt in the light of all of the other evidence in the case. I merely hold that there is no duty on an accused to explain the possession, and there can therefore no longer be an instruction which authorizes a factual presumption of guilt based on a failure to explain under the stated circumstances. In my view the presence or lack of explanation becomes immaterial.
The District Court properly disposed of the matter, despite prior opinions to the contrary from which we should now recede and clarify the rule. The decision under review should be approved and the writ discharged.
I therefore respectfully dissent.
DREW and ERVIN, JJ., concur.