360 So.2d 1293 (1978)
Victor JONES, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-719.
District Court of Appeal of Florida, Third District.
July 18, 1978.
*1295 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., Arthur Joel Berger, Special Asst. Atty. Gen., for appellee.
Before BARKDULL and NATHAN, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
NATHAN, Judge.
Victor Jones, defendant in the trial court, was charged with first degree murder in that he proximately caused the death of Kristi Lynn Stidham by unlawfully distributing heroin to her in violation of Section 782.04(1)(a), Florida Statutes, (1975).[1] He was convicted by a jury of manslaughter, and sentenced to a term of ten years imprisonment. By this appeal he urges that the trial court committed error in failing to exclude toxicological evidence offered by the medical examiner as to the cause of death, in admitting into evidence certain admissions made by the defendant, and in denying the defense's motions for acquittal and new trial. A careful review of the record, the exhaustive briefs offered by both parties to this appeal, and the applicable law leads us to conclude that the decisions of the trial court must be affirmed in all respects.
The victim, the defendant, and several others, including one Phillip Calver, a major state's witness at trial, had been partying at a local lounge until the wee hours of the morning of October 29, 1975. After they dispersed, Jones returned to his home and went to sleep. Testimony of witnesses to whom defendant admitted the following facts revealed that Jones was awakened shortly thereafter by Ms. Stidham and a third man. They asked him to "cop some dope" for them, for which they gave him the money. Jones procured some "junk or stuff" and returned to his home, where all three injected themselves.[2] Thereafter, Ms. Stidham became unconscious and appeared to have stopped breathing. Calver and two others, who had been summoned to Jones' home, rushed her to Mercy Hospital where one of the three informed hospital attendants that Ms. Stidham had overdosed on heroin. Efforts to resuscitate her failed, and she was pronounced dead about twenty minutes later.
Both the police and the medical examiner were notified of her death. Her body was quickly taken to the medical examiner's office where an autopsy was performed, which, along with subsequent toxicological tests provided a basis for the medical examiner's determination that the cause of death was "acute narcotism."
After an investigation, Jones was charged with murder. In May of 1976, after delays related to determinations of defendant's competency, the public defender was appointed to defend him, and filed a motion for discovery. A portion of the original materials upon which toxicological tests had been performed by the medical examiner's office had become unavailable. In September, 1976, nearly a year after the autopsy and toxicological tests had been performed, defendant filed a motion to suppress testimony related to the toxicological tests.
*1296 The trial judge treated the motion to suppress as a motion to exclude testimony and held several comprehensive hearings on the issue, after which he denied the motion, concluding:
"We're talking about a few minor particles of the total tangible evidence ...
* * * * * *
[O]n the basis of what has been presented and on the basis of the law, the State, number one, acted in good faith, and number two, the procedures . . used in this particular case were reasonable... . [T]he defendant has, by virtue of the ability to cross examine the experts themselves and to bring out the weakness in the State's case, in a sense, and to bring out to the jury that they disposed of the items and the reasons why.
This defendant's rights [sic] to due process of law is adequately protected, and also, the defendant's right to confront the witnesses and evidence against him is adequately protected.
So I'm going to deny the motion."
Trial was had in January of 1977, and this appeal ensued. Additional facts pertinent to each of defendant's arguments will be presented as necessary in discussing these contentions.
Defendant first argues that the admission of the medical examiner's toxicological findings, when certain of the original materials used were no longer available to the defense for independent testing, deprived him of the full protection of Florida Rule of Criminal Procedure 3.220, and of his rights to confrontation and due process. We note initially that although the defense moved to suppress this evidence prior to trial, no specific objection was raised at trial to the admissibility of either the toxicological test results or the testimony as to the cause of death. Failure to renew an objection at trial contemporaneously with admission of the contested evidence constitutes a waiver of the right to appellate review of an alleged error, even though issues of constitutional dimension are claimed to exist. O'Berry v. Wainwright, 300 So.2d 740 (Fla. 4th DCA 1974); Tennant v. State, 205 So.2d 324 (Fla. 1st DCA 1967). See also Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).
Nevertheless, because of the importance of the issues raised by defendant, we deem it advisable to reach the question of whether, had contemporaneous objection been made, the state's inability to produce a portion of the original organic materials used by the medical examiner's office for toxicological tests would have necessitated reversal when (1) the unavailable materials were no longer extant either because they were consumed in the testing process or inadvertently discarded by the medical examiner's staff; (2) considerable material was preserved which would have made re-testing possible although less satisfactory and probably less definitive; (3) the individuals who had conducted the tests were available for cross examination; and (4) most importantly, the procedures utilized by the medical examiner were scientifically sound and reasonably calculated to balance the interests of the state and any potential defendant.[3]
The key question in a situation in which a discovery violation is alleged is whether or not the defendant was significantly prejudiced by the state's failure to produce the requested evidence. Holman v. State, 347 So.2d 832 (Fla. 3d DCA 1977); Smith v. State, 305 So.2d 868 (Fla. 3d DCA 1975); Pizzo v. State, 289 So.2d 26 (Fla. 2d DCA 1974). If the defense were prejudiced, Florida law would require reversal whether or not the state had acted in good faith. *1297 Holman, supra; Pizzo, supra. But where prejudice is not shown by the non-compliance, reversal is not warranted. Richardson v. State, 246 So.2d 771 (Fla. 1971); Kruglak v. State, 300 So.2d 315 (Fla. 3d DCA 1974). Relevant evidence should not be excluded from the jury unless no other remedy suffices. Cooper v. State, 336 So.2d 1133 (Fla. 1976); Williams v. State, 264 So.2d 106 (Fla. 4th DCA 1972); Holman, supra.
In the instant case, the medical examiner's conclusions as to cause of death were based on a limited history of the deceased, the past experience of the physician performing the autopsy, the findings discovered through autopsy, and the findings of toxicological tests performed on various tissues and bodily fluids of the victim shortly after death occurred. The pathologist who performed the autopsy testified that he would have concluded that the cause of death was an overdose of heroin even if he had not had the benefit of the toxicological findings. In other words, this evidence was merely cumulative and corroborative, not determinative.
Moreover, the defendant never availed himself of the opportunity to conduct independent tests on the material which was preserved to show either that there was a reasonable possibility that the cause of death was other than as determined by the medical examiner, that the material available was inadequate to make an independent determination of the cause of death, or that the missing material was crucial. Neither did defendant seek to have an independent expert review the original notes and reports preserved by the medical examiner's office.
We conclude that defendant has failed to establish the existence of any prejudice to his cause by the admission into evidence of conclusions derived from the scientifically sound and procedurally reasonable course of action followed by the medical examiner's office.
It is not necessary, in all instances, to produce original physical evidence in order to produce testimony about it. Roberts v. State, 164 So.2d 817 (Fla. 1964); Smith v. State, 305 So.2d 868 (Fla. 3d DCA 1975). This is especially true when the original object from which derivative evidence was adduced was not available to the state at the time of trial. Baum v. State, 353 So.2d 936 (Fla. 3d DCA 1978); Butler v. State, 348 So.2d 627 (Fla. 3d DCA 1977).
Defendant nonetheless contends that this court's decision in Johnson v. State, 249 So.2d 470 (Fla. 3d DCA 1971), cert. dischgd., 280 So.2d 673 (Fla. 1973), controls the instant situation. In Johnson, the particular bullet which had killed the victim was unavailable to the defense. This court found reversible error in the trial court's denial of defendant's motion to suppress the testimony of a ballistics expert who stated that the markings on the fatal bullet corresponded to those on defendant's pistol. The Johnson Court noted:
"The state may not by the simple statement that they have `lost the physical evidence' prevent the exercise of [an important procedural right] and then use the [evidence] against the defendant."
It further stated:
"[T]he evidence given by the ballistics expert was in no way cumulative and was so important in the case against this appellant that its admission was prejudicial error." 249 So.2d 470 at 472.
We have already noted that the evidence in the instant case was cumulative and its unavailability was not demonstrably prejudicial. We add that Johnson is distinguishable in other ways as well. A bullet is not consumed in the testing process, nor does it deteriorate over a short term as organic matter may. Preservation of a single bullet does not present the storage problems inherent in preservation of a quantity of organic material. Moreover, in the case at bar the prosecutor's office did not "lose" the evidence. The medical examiner's office made a reasonable effort to preserve as much of it as possible.
Some of the preserved material could have been utilized to perform independent tests had the defense made the effort. The fatal bullet in Johnson was the only evidence *1298 the defense could have used to confirm the expert's conclusions. The object of the test in Johnson was to link a particular defendant with a particular crime. The object of the tests in the instant case was to determine a cause of death, not to establish criminality at all. The Johnson decision is not controlling in the case before us.
In fine, where the procedures used by the medical examiner's office were reasonably calculated to preserve important evidence in the event the need should arise to protect the interests of either the state or a potential defendant, and where no significant prejudice was shown to have proceeded from the absence of the requested evidence, we find no denial of the protections of either Rule 3.220, the right to confrontation, or the right to due process.
The essence of defendant's next argument is that his extra-judicial statements admitting that he had procured heroin for the deceased were erroneously admitted into evidence for two reasons: (1) the corpus delicti had not been established by prima facie evidence independent of defendant's admissions prior to their introduction into evidence; and (2) the state never adduced independent evidence of the homicide sufficient to admit these extra-judicial statements into evidence at all.
As to the first point, while it is always preferable that corpus delicti be established by independent evidence before admitting into evidence a defendant's confession or admission, it is not necessary that proof of corpus delicti be complete in every detail at the time a defendant's confession is introduced. If an extra-judicial confession or admission is admitted prior to establishment of the corpus delicti by independent evidence, and additional independent evidence is later introduced which would have justified the admission of such statements, the technical error in prematurely admitting them is cured. County of Dade v. Pedigo, 181 So.2d 720 (Fla. 3d DCA 1966); Smith v. State, 135 Fla. 835, 186 So. 203 (1939); Parrish v. State, 90 Fla. 25, 105 So. 130 (1925); Holland v. State, 39 Fla. 178, 22 So. 298 (1897).
The second point is the more crucial. Defendant asserts that insufficient evidence was adduced to prove the corpus delicti of the crime at all absent the evidence provided by Jones' admissions. The record belies this assertion.
The corpus delicti of a homicide consists of three elements: the fact of death, the criminal agency of another, and the identity of the victim. The first and third elements are not at issue here. In this case, the second element requires a prima facie showing that a) heroin was distributed, b) by a person at least 18 years old, and c) the user died as a proximate result of this distribution. Section 782.04(1)(a), Florida Statutes (1975).
At the time the state sought to introduce Jones' admissions, the medical examiner had testified that the victim died from an overdose of heroin and that heroin had been injected a few hours before death. Phillip Calver had testified that he found Ms. Stidham in defendant's room, her breathing apparently stopped, her lips discolored, with bloody foam around her nose and mouth. Calver also had testified that defendant implored him to "Get her out of here!" lest Jones' mother discover the situation. It was later established that defendant was over eighteen.
In order for a court to admit a confession or admission the state must prove, independently of the confession, that the crime charged has occurred; that is, the state must prove all the elements of the corpus delicti of the crime charged. Such proof need not be by direct evidence. It may be adduced in the form of circumstantial evidence. State v. Allen, 335 So.2d 823 (Fla. 1976); Frazier v. State, 107 So.2d 16 (Fla. 1968); Holland v. State, supra.
Most critical to an understanding of the nature of the proof required to establish corpus delicti is the fact that the state need establish only a prima facie showing of all the elements thereof in order for a confession to be admissible. Clark v. State, 229 So.2d 877 (Fla. 2d DCA 1969); La Salle *1299 v. State, 187 So.2d 407 (Fla. 3d DCA 1966); Sciortino v. State, 115 So.2d 93 (Fla. 2d DCA 1959). "Prima facie" is defined as: "At first sight; on the first appearance; so far as can be judged from first disclosure; ... a fact presumed to be true unless disproved by some evidence to the contrary." Black's Law Dictionary, 1353 (4th ed. 1968). Such is the state's preliminary burden. It differs substantially from the requirement that the state establish a defendant's guilt "beyond a reasonable doubt" before he can be convicted of the crime charged. See State v. Allen, supra.
We agree with the trial court that evidence showing the deceased had died from an overdose of heroin, that heroin had been injected shortly before death occurred, and that she was found dying in the company of a person over eighteen who urgently sought her removal from the premises was sufficient to establish a prima facie showing that heroin which was distributed to her by a person over eight resulted in her death.[4] As the Florida Supreme Court has stated:
"Circumstantial evidence, by its very nature, is not free from alternate interpretations. The state is not obliged to rebut conclusively every possible variation, however, or to explain every possible construction in a way which is consistent only with the allegations against the defendant. Were those requirements placed on the state for these purposes, circumstantial evidence would always be inadequate to establish a preliminary showing of the necessary elements of a crime."
State v. Allen, supra, at 826.
The corpus delicti having been shown, prima facie, by substantial circumstantial evidence, the statements of the defendant were admissible and could then be considered by the jury along with the other evidence presented. Vaillancourt v. State, 288 So.2d 216 (Fla. 1974); Mitchell v. State, 45 Fla. 76, 33 So. 1009 (1903); Brown v. State, 44 Fla. 28, 32 So. 107 (1902).
Defendant's final point on appeal, which contests the sufficiency of the evidence upon which his conviction was based, is deemed to be without merit.
Affirmed.
NOTES
[1] In 1975, § 782.04(1)(a) defined first degree murder, in pertinent part, as: "The unlawful killing of a human being ... which resulted from the unlawful distribution of heroin by a person 18 years of age or older when such drug is proven to be the proximate cause of the death of the user."
[2] There is some conflict in the testimony as to whether defendant actually injected Ms. Stidham or whether she did so herself. All evidence on this point was derived from admissions defendant made to three different witnesses, two of whom indicated that Ms. Stidham had injected herself.
[3] The medical examiner's office is required by law to determine the cause of death in a variety of situations. Ch. 406, Florida Statutes (1975). The tests run by the medical examiner were designed to determine the cause of death, not to establish criminality or the lack of it, or to link any individual with a crime. The defense conceded that there was no evidence the medical examiner knew of any impending criminal prosecution at the time the autopsy and toxicological tests were performed, and that the medical examiner's office had no way of knowing at that time whether or not their findings would result in a criminal prosecution.
[4] We note that it was not necessary to show that this particular defendant had distributed the heroin, only that it was reasonably probable that the heroin had been distributed by a person 18 or over, and that the distribution had resulted in the victim's death.