395 So.2d 621 (1981)
Leroy LYNN, Appellant,
v.
STATE of Florida, Appellee.
No. SS-519.
District Court of Appeal of Florida, First District.
March 25, 1981.
Michael J. Minerva, Public Defender, Randolph P. Murrell, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Carolyn M. Snurkowski, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
This is an appeal of a final judgment of the Circuit Court for Leon County finding appellant guilty of grant theft and temporary unauthorized use of a motor vehicle, and not guilty of additional charges of burglary and dealing in stolen property. We affirm.
Issues presented are: (1) Whether the remarks made by the assistant state attorney during his closing argument amounted to a violation of appellant's right to due process, and prevented him from receiving a fair trial; and (2) Whether the instruction on proof of unexplained possession of stolen property amounted to a comment on the evidence that deprived appellant of his right to due process and prevented him from receiving a fair trial.
On June 7, 1979, appellant, Nathaniel Raymond Haines, and James Levon Atkins, were charged by a four-count information with the crimes of burglary of a dwelling, grand theft, grand theft of a motor vehicle, and dealing in stolen property. The defendant was tried separately before a jury on October 25, 1979 on the burglary and two grand theft charges. The evidence at trial showed that on the morning of May 17, 1979, Mr. Townsend's residence was burglarized. There were two sets of shoe prints found in the areas where the intruders were likely to have been. Various items of personal property were taken from the dwelling, and a 1966 Ford Mustang was taken from Mr. Townsend's garage. There was evidence that the burglary occurred at approximately 11:30 in the morning.
*622 Appellant's sister testified that between 12:30 and 1:00 on May 17 appellant and Nathaniel Haines arrived at her mobile home in a Mustang automobile. They asked if they could store certain property in her home. The property was unloaded from the car into the house. At approximately 6:45 of the same evening a Georgia police officer, Louis Jackson, stopped a gold Mustang inside Thomasville city limits. The driver Nathaniel Haines was arrested for driving without a valid driver's license. James Atkins, the front seat passenger, and appellant, the back seat passenger, were not detained. After appellant and Atkins had left Officer Jackson discovered that the Mustang was a stolen vehicle. The car was impounded and the Leon County sheriff's department was notified. A Leon County Deputy Sheriff testified that he drove to Thomasville and interviewed Haines. Haines denied any knowledge of the burglary and stated he thought the car and the personal property belonged to Leroy Lynn. A search warrant was issued to recover the property being stored at appellant's sister's home. Most of the missing items were recovered there. Mr. Townsend later discovered a checkbook, which had been taken during the burglary, behind the sunvisor of the car. Appellant's fingerprints were found on that checkbook. Co-defendant Haines testified that he and appellant had burglarized the home, taken the car, stored some of the items at appellant's sister's house, and had attempted to cash a forged check on Mr. Townsend's account.
Appellant testified that on the morning of the 17th he had dressed for work and had waited for his father to pick him up to go to work. His father never showed up and about noon appellant walked down to the mailbox. At that time, Nathaniel Haines drove by in the gold Mustang and picked appellant up. Appellant testified that Haines stated the car was his uncle's and he was using it to move some of his belongings. The two decided to go looking for girls and decided to store the items in appellant's sister's home because it was close by. They later picked up James Atkins, and were eventually stopped in Thomasville, Georgia. Appellant testified that he still thought the only trouble Nathaniel Haines was in was for driving without a valid driving license. A week later he learned of the burglary. James Atkins did not testify.
In closing arguments the assistant state attorney, in discussing the checkbook and the fingerprints found on the back of it, stated: "We come to the check... . Isn't it interesting, the explanation that comes with the check. Now I think  there's not much question in my mind about the check." This statement was not objected to. In reference to Haines' testimony the assistant state attorney stated: "When he testified here today, he told you that he was telling the truth; and we know from the other evidence that most everything he said, I think everything he said was true, and we know it by independent evidence from the investigation that the officer did." (e.s.) No objection was made to this statement. Later closing arguments respond to defense counsel's remarks as follows: "He said, `Where is Charles Williams?' Always got to have the mystery man. I ask you the question of where is James Atkins? We presented to you the available witnesses. Where is James Atkins today? Sometimes we know where they are and can't tell you." (e.s.) The defense counsel objected and moved for a mistrial, which was denied. Lynn was found not guilty of the burglary charge, guilty of the grand theft charge relating to the personal property taken from the home, and guilty of the lesser included offense of temporary unauthorized use of a motor vehicle. Appellant was sentenced to five years in prison on the grand theft charge and one year in the county jail on the temporary unauthorized use charge, the two sentences to run concurrently.
On the first issue we conclude the comments in this case do not require reversal. The Supreme Court in Carlile v. State, 129 Fla. 860, 176 So. 862 (1937), stated the rule that if the improper remarks are of such a character that neither rebuke or retraction may entirely destroy their sinister influence, a new trial should be awarded, *623 regardless of the absence of an objection. In this case, the statement in question does not impart any clear meaning to the jury. Even in conjunction with the two prior statements, we believe the remark was not of such a character as to destroy the defendant's right to a fair trial, measured by precedent in this area. The statements made by the assistant state attorney were in direct response to comments made by appellant's trial counsel regarding the availability of witnesses. The statements that were made were fair comments to refute statements made by appellant's trial counsel during closing argument. In United States v. Tasto, 586 F.2d 1068 (5th Cir.1978), the court stated: "A prosecutorial statement that additional evidence is available though not produced, is usually impermissible." However, in this case, like Tasto, the remarks were invited by a statement earlier made by defense counsel and this excursion outside the record by defense counsel was met by a reply in kind. In Dixon v. State, 206 So.2d 55 (Fla. 4th DCA 1968), the court held: "The argument by the prosecuting attorney was invited by the argument made by defendant's attorney and was not prejudicial to a fair trial."
Appellee also contends that if the comments were error, the proper remedy for relief would have been a motion to strike and request for curative instructions. Appellant should not be heard to complain when that remedy was not sought. See Frierson v. State, 339 So.2d 312 (Fla.3d DCA 1976), where the court held the prosecutor's remarks in closing argument were not so harmful as to require a new trial. The court there stated that each case involving an alleged improper remark by the prosecutor must be considered on its own merits and within the circumstances existing at the time the questionable statement was made. In State v. Cumbie, 380 So.2d 1031 (Fla. 1980), the court held that from a review of the entire record Cumbie received a fair trial in spite of the prosecutor's improper closing argument. The trial court there sustained the objection and admonished the jury to disregard the remark. No further curative instruction was requested. The Supreme Court, finding Cumbie received a fair trial, quashed this court's order and reinstated the judgment of conviction.
By the second issue above stated appellant challenges the giving of the following standard jury instruction:
Proof of unexplained possession by an accused of property recently stolen by means of a burglary may justify a conviction of a burglary with intent to steal that property, if the circumstances of the burglary and of the possession of the stolen property when considered in light of all the evidence in the case convince you beyond a reasonable doubt that the defendant committed the burglary.
Appellant's contention is that the instruction was improper because it assumed a fact that was in dispute, i.e., the incredibility of appellant's explanation of possession. Appellee asserts the court properly assumed that fact, having "made an initial determination that appellant's alleged explanation ... was not believable." We conclude instead that the instruction was proper because it did not assume that disputed fact and because the instruction is properly given when credibility of an explanation of possession is in dispute. We note, however, that the parties' positions would be supported by a literal reading of a sentence appearing by way of dictum in Griffin v. State, 370 So.2d 860 (Fla. 1st DCA 1979), intended as a summary of the decision in Palmer v. State, 323 So.2d 612 (Fla. 1st DCA 1975), as follows: "[U]nless it is first shown that defendant, when arrested, either failed to explain or gave an incredible or unbelievable explanation, the instruction is not applicable." The ruling in Palmer has now been effectively disclaimed by Smith v. State, 394 So.2d 407 (Fla. 1980), and we conclude the above-quoted statement from Griffin may not be construed to require (or even permit) the court's evaluation of the credibility of an explanation of possession in determining applicability of the instruction. The Young opinion is clear to the effect that the inference "does not *624 arise from the possessor's failure to explain... . It is the fact of possession that provides the basis for the inference of guilt." Young v. State, 217 So.2d 567, at 570 (Fla. 1968). Whether or not the word "unexplained" might properly be omitted from the instruction (cf. Marinos v. State, 371 So.2d 675 (Fla. 4th DCA 1979)), the language of the instruction, supra, has been approved by the Court and may arguably refer to any possession (of property recently stolen) which the jury finds to be unexplained by the evidence. We note also that the decision in Griffin rested on absence of evidence of possession rather than lack of explanation, credible or otherwise. The jury in the present case, as already noted, did return a verdict of not guilty on the charge of burglary, the crime to which the instruction was directed.
The judgment appealed is accordingly affirmed.
SHAW, J., concurs.
ERVIN, J., dissents with opinion.
ERVIN, Judge, dissenting.
I agree with the majority that the remarks made by the assistant state attorney during closing argument did not prevent the defendant from receiving a fair trial. I must respectfully disagree, however, with the majority's conclusion that the trial court's communication to the jury of Florida Standard Jury Instruction, Criminal Cases, 2.07, was not prejudicial error. At the time of his apprehension, appellant explained  similar to his testimony at trial  that Nathaniel Haines had picked him up near his home in a 1966 Mustang automobile, and that he was unaware that either the car or any of its contents were stolen. I had always considered, until now, that the word "unexplained" meant precisely that. The majority, however, interprets the charge as properly given, although an explanation is offered, "when credibility of an explanation of possession is in dispute." Ante at 623. While State v. Young, 217 So.2d 567, 570 (Fla. 1968), does assert that "[i]t is the fact of possession that provides the basis for the inference of guilt ..." (emphasis in original), this statement was intended to amplify the immediately preceding sentence observing that the inference "does not arise from the possessor's failure to explain ... that his possession of the recently stolen goods is innocent." Id.
I think it questionable whether the four-member majority of the Young court necessarily intended to sanction the application of the charge to a situation in which the accused offers a palpably credible explanation for his possession of recently stolen property. I seriously doubt whether the Young holding was intended to extend beyond the specific facts before it: circumstances showing that the defendant made no explanation either at the time of arrest or at the time of trial.
I also question the materiality of Smith v. State, 394 So.2d 407 (Fla. 1980), to the issue before us. Smith upheld the giving of the standard instruction under circumstances showing the defendant made no attempt to explain his possession of recently stolen property, either at the time of his arrest, or when he testified in his defense at trial. Smith disapproved the rule stated in Palmer v. State, 323 So.2d 612 (Fla. 1st DCA 1975), cert. den., 336 So.2d 108 (Fla. 1976), which had held that an instruction,[1] somewhat similar to the standard instruction, was applicable only to those circumstances where the accused, given an opportunity at the time of apprehension to explain his possession, either volunteered an unreasonable or incredible explanation at such time, *625 or where he failed to explain his possession during cross-examination at trial. Smith did not address the question whether it was appropriate to apply the standard charge to any situation  as here  where a reasonable explanation is provided.
In the case at bar, the majority apparently holds that a trial court is authorized to give the standard jury instruction any time an accused offers an explanation whether arguably credible or otherwise. The difficulty in applying such a rule to all cases in which an explanation is offered is that the standard charge, without amplification, is misleading, since it is in effect an implicit comment to the jury that the defendant's explanation is so unreasonable and incredible as to be unworthy of belief; therefore, the explanation offered is in effect no explanation at all.
Moreover, the indiscriminate giving of the standard instruction in all such cases would, in my judgment, be an invasion by the court of the jury's province to determine the credibility of the evidence. Such a charge is particularly devastating to a defendant's case, as the one before us, in which the only evidence directly linking the defendant with the crime charged comes from the accomplice. In the case at bar, appellant's conviction depended in great measure upon the acceptance by the jury that Nathaniel Haines' testimony  implicating the defendant in the burglary of the dwelling from which the stolen items were taken  was credible. This testimony was of course contradicted by the defendant. Once the standard instruction, with its implicit suggestiveness, was imposed, the scales may well have been tipped against the defendant.
Perhaps a modified instruction  like that proposed in Palmer  would be appropriate to a situation in which the defendant gives an explanation "which arguably raises a reasonable doubt as to his guilt... ." 323 So.2d at 618, n. 8. Under those circumstances "it would seem ... that the accused is entitled to a balancing charge that his possession does not infer guilt unless the state disproves the explanation."[2]Id.
The giving of the standard instruction here, without further exposition, appears little more than an impermissible comment to the jury as to how much weight it should attach to the explanation offered. As such, it should not be countenanced.
NOTES
[1] The instruction provided in part:

I charge you further that with reference to the possession of recently stolen goods, that where it is shown beyond a reasonable doubt that a building has been entered and property stolen from it and soon thereafter the property is found in possession of the person charged with entering the building with an intent to steal, such possession unexplained, or if explained is by an explanation so unreasonable and incredible that the jury finds it unworthy of belief, may warrant the jury to infer guilt of the crime of entering the building with intent to steal.
323 So.2d at 615 (emphasis in original).
[2] Such a balancing charge is founded on legal principles long antedating Young v. State, supra. Thus, in McDonald v. State, 56 Fla. 74, 47 So. 485, 486 (1908), it is stated:

Where a party who is found in possession of goods recently stolen directly gives a reasonable and credible account of how he came into such possession, or such an account as will raise a reasonable doubt in the minds of the jury, then it becomes the duty of the state to prove that such account is untrue, otherwise he should be acquitted. The account given must be not only reasonable, but it must be credible, or enough so to raise a reasonable doubt in the minds of the jury, who are the judges of its reasonableness and probability, as well as of its credibility. The account given may be reasonable and highly plausible, yet, if the jury do [sic] not believe it, they have the right to convict upon the evidence furnished by the possession of the stolen goods alone, even though the state does not put in any evidence directly to prove the falsity of the account given.