591 So.2d 987 (1991)
Donnie Wayne PHILLIPS, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 90-2883.
District Court of Appeal of Florida, First District.
December 13, 1991.
Rehearing Denied January 16, 1992.
Nancy A. Daniels, Public Defender, Lynn A. Williams, Asst. Public Defender, Tallahassee, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee/cross-appellant.
WIGGINTON, Judge.
Donnie Wayne Phillips brings this appeal, and the state cross-appeals, Phillips' judgment of conviction and sentence for burglary of a structure and grand theft. We affirm on cross-appeal, holding that the trial court did not err in granting the defense motion for partial directed verdict of acquittal as to the additional counts charging armed burglary and grand theft of a firearm.[1] We likewise affirm the trial court's denial of appellant's remaining motions for judgments of acquittal on the *988 burglary and grand theft charges. We agree with the state that there was sufficient evidence presented to submit the case to the jury. Nevertheless, we find that the trial court did err in overruling appellant's objection to certain testimony from a law enforcement officer on the basis that it was a comment on appellant's silence in contravention of his rights to due process and not to be a witness against himself guaranteed by Article I, section 9 of the Florida Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. Accordingly, we must reverse appellant's judgment of conviction and sentence and remand for a new trial.[2]
The evidence adduced at trial shows that on September 14, 1989, the Turner home was burglarized. Of the numerous items taken in the burglary were some travel bags and a microscope. On October 10, 1989, pursuant to a search warrant, a closet located in a bedroom allegedly occupied solely by appellant while he was living in the home was searched. Found in the closet were the microscope and a duffle-type bag belonging to the Turners. Appellant was not present at the time of the search, but the investigating officer testified he noticed that lying on the bed were clothes similar to the ones the officer had earlier that same day observed appellant wearing when he discovered him near the scene of a residence later found to have been burglarized.
In regard to that latter burglary, on the day the search warrant was executed, Officer Larry Bryant testified that he was patrolling a particular area of Milton due to a rash of recent burglaries. Around noon, he observed on a small road approximately 200 feet behind the Maynard residence a vehicle backed into the woods. This particular testimony was earlier the subject of a defense motion in limine to exclude anticipated "Williams" rule evidence.[3] In denying the motion, the court noted appellant's objection to the Williams rule testimony was preserved for the record. The court also instructed the jury that the evidence they were about to hear was to be considered for the limited purpose of proving plan, knowledge, identity or the absence of mistake or accident on the part of the defendant, and that the defendant was not on trial for the crime included in the anticipated testimony.
Officer Bryant testified that he approached the vehicle, and while at the driver's door, observed a white male whom he later identified as appellant running from the direction of the Maynard house. Bryant stated that appellant was "running from the direction of the house back up the street on the corner coming through the woods around the vehicle." Appellant stopped upon seeing Bryant and asked, "What's the matter, Mr. Bryant?" Bryant responded by asking appellant his name, to which appellant replied, "John Brown." Bryant recognized appellant and knew appellant's name was not John Brown, although at the time he could not recall appellant's true name. Bryant further testified that appellant said the car belonged to a friend of his who had been driving. He pointed back towards the direction of the house when Bryant asked appellant where the friend was. At that point, when Bryant attempted to frisk him, appellant broke loose from Bryant and fled.
Bryant then determined that the Maynard home had been burglarized. He observed inside the privacy fence numerous items stacked up including a green tote bag containing a tire tool and miscellaneous items taken from the residence. He later discovered that the green tote bag belonged to the Turners. Bryant also discovered that the vehicle belonged to one Kenny Tedder, appellant's brother-in-law. Latent fingerprints lifted from the Maynard residence were compared to the prints of appellant and Tedder with negative results. However, a latent palm print obtained from the passenger side of the vehicle was identified *989 as belonging to appellant. Tedder's prints were identified on the driver's door of the vehicle.
After he left the Maynard residence, Bryant proceeded to the house where he believed appellant was residing, and which belonged to appellant's mother. When he could not locate appellant, he obtained a search warrant and returned later that afternoon. As for the bedroom subsequently searched by Bryant, several witnesses at trial identified the room in the home as belonging to appellant, and stated that no one ever saw anyone else stay in the room.
Deputy Sheriff Jim Spencer participated in the execution of the search warrant. He searched the middle bedroom allegedly occupied by appellant and recovered items later identified as coming from the Turner burglary. In addition, he recovered in the same bedroom a letter addressed to appellant. Also, as noted above, Officer Bryant noticed a shirt and a pair of pants, still retaining the belt, lying on the bed. These clothes were similar to the ones he had observed appellant wearing earlier in the day when he observed him running from the Maynard residence. While executing the search warrant, the phone rang and the caller identified himself as appellant. When Bryant informed him that the best thing to do was to turn himself in, the individual hung up. Bryant also noticed that a car parked in front of the residence belonged to appellant. Appellant was later arrested at the home.
Over appellant's objection, Bryant was allowed to testify that after appellant was arrested and given his Miranda warnings, he was afforded an opportunity to explain his possession of the items stolen from the Turner burglary. Bryant testified that appellant did not give an explanation. During closing statements, the prosecutor reminded the jury that Officer Bryant had given appellant an opportunity to explain his possession of the recently stolen property and that appellant had given no explanation. Appellant's objection to these comments was overruled.
Because we find it necessary to reverse and remand for a new trial, we must initially address the issue raised under Point III regarding whether the trial court erred in admitting the collateral evidence of the Maynard burglary. Primarily, appellant maintains that the state failed to establish he actually committed the Maynard burglary, arguing that it is well-established that evidence of a collateral crime is inadmissible if there is no proof that the accused committed the collateral crime. As support therefor, appellant cites to State v. Norris, 168 So.2d 541 (Fla. 1964), and Dibble v. State, 347 So.2d 1096 (Fla. 2d DCA 1977). In Norris, the supreme court held that in order for evidence of a collateral crime to be allowed against an accused, "there must be accompanying evidence to identify or connect the accused of the collateral facts." 168 So.2d at 543. Mere suspicion is insufficient; rather, the proof should be "clear and convincing." Id. Thereafter, in Dibble, the court cited Norris and succinctly ruled that it is "essential to show that the former crime was committed and committed by the person on trial." 347 So.2d at 1097.[4]
In the instant case, we are persuaded that clear and convincing evidence connected *990 appellant to the Maynard burglary far and above evidence of his mere presence at the scene of the crime and his flight therefrom. In addition, the state adduced evidence of appellant's giving a false name to Officer Bryant at the Maynard scene, as well as the subsequent discovery of the Turner bag at the Maynard residence. Also compelling was the later discovery of a similar tote bag belonging to the Turners located in appellant's bedroom closet and found pursuant to a search warrant based on Officer Bryant's suspicions aroused by appellant's conduct at the scene of the Maynard burglary. Finally, there was the presence of appellant's clothing lying on the bed which was identified by Officer Bryant as being similar to the clothes worn by appellant when he was discovered running from the Maynard residence. Not only did the foregoing evidence clearly connect appellant to the Maynard burglary, we find it highly relevant in rebutting appellant's defense that it was not he but another person who had committed the Turner burglary and had placed those items in appellant's closet, thereby tending to establish identity and knowledge. Accordingly, the trial court did not err in admitting the evidence.
Nevertheless, we do find the trial court erred in overruling appellant's objection to Officer Bryant's testimony regarding appellant's failing to provide an explanation as to how he came into possession of the Turner property. As pointed out by appellant, the court's perception of the issue was that it was the only way to give effect to the jury instruction that proof of recently stolen property, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property was stolen. However, the cases cited by the state and relied on by the judge, as pointed out by appellant, are cases concerning the constitutionality of the jury instruction. See State v. Young, 217 So.2d 567 (Fla. 1968); Smith v. State, 394 So.2d 407 (Fla. 1980). We agree with appellant that Bryant's testimony was evidence fairly susceptible of being interpreted by the jury as a comment on appellant's silence. Cf. State v. Smith, 573 So.2d 306 (Fla. 1990). As earlier stated in Hosper v. State, 513 So.2d 234 (Fla. 3d DCA 1987), subsequently quoted with approval by the supreme court in Smith:
The prosecution is not permitted to comment upon a defendant's failure to offer an exculpatory statement prior to trial, since this would amount to a comment upon the defendant's right to remain silent.
513 So.2d at 235.
Although the state relies on the supreme court's decision in State v. Young, it omits the statement in Young that there is no mandatory duty to explain possession of the goods and that it is up to the accused to do so. 217 So.2d at 570. Also, as observed by the United States Supreme Court in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973):
It is true that the practical effect of instructing the jury on the inferences arising from unexplained possession of recently stolen property is to shift the burden of going forward with evidence to the defendant. If the Government proves possession and nothing more, this evidence remains unexplained unless the defendant introduces evidence, since ordinarily the Government's evidence will not provide an explanation of his possession consistent with innocence.

At 846, n. 11, 93 S.Ct. at 2363 n. 11, 37 L.Ed.2d at 387, n. 11 (emphasis added). Thus, the state is not required as a predicate for obtaining the instruction to put on affirmative evidence that the accused did not explain his possession at the time of his arrest. Clearly, from our opinion herein, the state may not do so without impermissibly commenting on the defendant's right to remain silent.
Based on the foregoing, appellant's conviction is reversed and the case remanded for a new trial.
AFFIRMED, in part, REVERSED, in part, and REMANDED for a new trial.
ERVIN and WOLF, JJ., concur.
NOTES
[1] As candidly admitted by cross-appellee, the state's appeal was authorized by State v. Hartzog, 575 So.2d 1328 (Fla. 1st DCA 1991).
[2] Because of our decision under this point, we need not reach appellant's Points II, IV, and V. However, for purposes of the new trial, we will discuss appellant's Point III questioning whether the trial court erred in admitting evidence of a collateral crime.
[3] Williams v. State, 110 So.2d 654 (Fla. 1959).
[4] But cf. Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), wherein the United States Supreme Court viewed the issue under Federal Rule 104(b)  similar to section 90.105, Florida Statutes  as not requiring the determination of the defendant's involvement in the other act or wrong by either a clear and convincing or preponderance of the evidence standard. Rather, the Court adopted a lower quantum of proof standard which would require the trial judge to determine merely whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense. One commentator urges the Huddleston decision should be adopted by the Florida courts "both because federal decisions interpreting the Federal Rules of Evidence are `persuasive guidelines' in interpreting a similar provision of the Florida Evidence Code [footnote omitted] and because Huddleston is soundly reasoned." See Ehrhardt, Florida Evidence (1992 Ed.) section 404.9 at 151. However, Professor Ehrhardt did admit that the issue of quantum of proof "may be one of form rather than substance," for the reason that "similar fact evidence which is suspect in establishing defendant's involvement should be excluded [under section 90.403] since the undue prejudice would substantially outweigh the probative value of the evidence."