896 So.2d 712 (2005)
Darryl WALKER, Petitioner,
v.
STATE of Florida, Respondent.
No. SC03-1555.
Supreme Court of Florida.
February 24, 2005.
Nancy A. Daniels, Public Defender and M.J. Lord, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Robert R. Wheeler, Bureau Chief Criminal Appeals, and Karen M. Holland, Assistant Attorney General, Tallahassee, FL, for Respondent.
QUINCE, J.
We have for review a decision of the First District Court of Appeal on the following question, which the court certified to be of great public importance:

*713 IS THE FLORIDA STANDARD JURY INSTRUCTION ON "POSSESSION OF PROPERTY RECENTLY STOLEN" AN IMPERMISSIBLE COMMENT ON THE EVIDENCE?
Walker v. State, 853 So.2d 498, 500 (Fla. 1st DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons stated below, we approve the First District's decision and answer the certified question in the negative.

FACTUAL AND PROCEDURAL HISTORY
At 6 a.m. on December 11, 2001, David Thompson returned to his apartment and found all of the lights on, the front door open, and a window near the kitchen broken. He asked his neighbor to call the police. When he went into his apartment, he found that it had been ransacked, with his television missing as well as some tire rims. None of his neighbors had witnessed the robbery.
On December 10, 2001, Darryl Walker had celebrated his birthday at the home of his girlfriend and mother of his daughter, Belinda Rawls. At midnight, he departed her home. About 3 a.m., Vernon Rogers (a.k.a., Jit) knocked on Rawls' door and stated that Walker had told him to ask her if it would be okay if they put "their stuff" in her house until morning. She agreed, and both Jit and Walker carried into her home a big screen television, four tire rims, and a speaker box. At 9 a.m., the police arrived at Rawls' home after having received a tip that the stolen television and tire rims were there. She allowed them to enter and assisted them in recovering the stolen goods, since both the television and the tire rims were in plain view from the doorway. Later that morning, she took the officers to Walker's home and then to Jit's home.
When questioned by Officer Emmett Matthews, Walker stated that he knew about the burglary but did not go inside the house. Rather, he "drove the guys around for a while then we got the stuff." Walker denied that he said this, and this conversation was not recorded. Officer Matthews testified that Walker was advised of his rights, that Walker did not appear to be under the influence of either drugs or alcohol, that he did not threaten Walker or make any promises, and that Walker agreed to speak with him. Officer Stephen Strickland also interviewed Walker but did not take a written statement. Walker told Officer Strickland that two individuals, Ronnie Reed (a.k.a., Run) and Jit, came to his house after midnight and that Walker drove them to various locations where they stole various items, including the television and tire rims. Walker denied that he ever said this to Officer Strickland. Walker said he told the officer that he had loaned the car to Run and Jit, that he did not know that they were using his car to commit various robberies, and that he only unloaded the stolen cargo, having no knowledge that the goods were stolen, in order to keep the goods from dirtying his seats.
Walker was charged pursuant to section 810.02(3), Florida Statutes (2001), with one count of burglary of a dwelling, a second-degree felony.[1] The jury found Walker guilty, and he was sentenced to five years as a habitual felony offender with credit *714 for 129 days served. The First District affirmed Walker's conviction and sentence and, in so doing, certified as a question of great public importance: "IS THE FLORIDA STANDARD JURY INSTRUCTION ON `POSSESSION OF PROPERTY RECENTLY STOLEN' AN IMPERMISSIBLE COMMENT ON THE EVIDENCE?" Walker v. State, 853 So.2d 498, 500 (Fla. 1st DCA 2003).

ANALYSIS
In Florida, there are two standard jury instructions on possession of property recently stolen. One involves burglary, and the other involves theft. The burglary instruction was given in this case. It states:
Proof of unexplained possession by an accused of property recently stolen by means of a burglary may justify a conviction of burglary with intent to steal that property if the circumstances of the burglary and of the possession of the stolen property, when considered in light of all evidence in the case, convince you beyond a reasonable doubt that the defendant committed the burglary.
Fla. Std. Jury Instr. (Crim.) 13.1 at 250. The theft instruction is quite similar, and it reads: "Proof of possession of recently stolen property, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen." Fla. Std. Jury Instr. (Crim.) 14.1 at 270. Both jury instructions are derived from section 812.022(2), Florida Statutes (2002), which reads verbatim like the theft instruction.[2] Both the burglary and theft instructions on possession of property recently stolen have been given in Florida since at least 1885. See Tilly v. State, 21 Fla. 242, 249 (1885) (holding that the exclusive possession of the whole or some part of stolen property by the prisoner recently after the theft is sufficient, when standing alone, to cast upon him the burden of explaining how he came by it, or of giving some explanation, and if he fails to do so, to warrant the jury in convicting him of the larceny, burglary or robbery); accord Roberson v. State, 40 Fla. 509, 24 So. 474, 479 (1898); Rimes v. State, 36 Fla. 90, 18 So. 114, 115 (1895); Leslie v. State, 35 Fla. 171, 17 So. 555, 557 (1895).
Walker argues that we should answer the certified question in the affirmative and hold that the instruction on possession of recently stolen property constitutes an impermissible comment on the evidence. See § 90.106, Fla. Stat. (2002) (providing that a judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused). He further argues the instruction should not have been given by the trial court and that he is entitled to a new trial. The State counters by arguing that the basis for giving the instruction was section 812.022(2), not the trial court's opinion of the evidence. The State asserts that the trial court did not state an opinion regarding Walker's knowledge, did not express any thoughts about how Walker's possession of the stolen property or his explanation of that possession demonstrated knowledge, did not distort or add to the evidence, and did not show partisanship. Rather, the trial court merely instructed the jury. Therefore, the State concludes that there was no error, that Walker's burglary conviction should be affirmed, and that *715 the certified question should be answered in the negative. We hold that the jury instruction on the possession of recently stolen property is not an impermissible comment on the evidence and answer the certified question in the negative.
The United States Supreme Court squarely addressed jury instructions on possession of recently stolen property in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), and approved their use. In Barnes, the petitioner was convicted in the United States District Court on two counts of possessing stolen United States Treasury checks, two counts of forging the checks, and two counts of uttering the checks knowing that they had been forged. Id. at 838, 93 S.Ct. 2357. Both the Ninth Circuit and the United States Supreme Court affirmed the convictions. In its opinion, the Supreme Court first stated that this type of jury instruction satisfied the requirements of due process:
In the present case we deal with a traditional common-law inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption "running through a dozen centuries." ... This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides strong indication that the instruction comports with due process.
This impressive historical basis, however, is not in itself sufficient to establish the instruction's constitutionality. Common-law inferences, like their statutory counterparts, must satisfy due process standards in light of present-day experience. In the present case the challenged instruction only permitted the inference of guilt from unexplained possession of recently stolen property. The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process.
Id. at 843-46, 93 S.Ct. 2357 (citations and footnotes omitted); accord Edwards v. State, 381 So.2d 696, 697 (Fla.1980) (indicating the inference arising from the unexplained possession of stolen property and jury instructions referring to it have been specifically approved by both Florida and federal courts). The Court in Barnes additionally discussed the defendant's claims that the jury instruction improperly shifted to him the burden of proof, that the jury instruction violated his privilege against self-incrimination, and that the jury instruction was an improper comment on the defendant's failure to testify. The Court indicated the instruction did not violate any of those principles. 412 U.S. at 846-47, 93 S.Ct. 2357. Likewise, in Edwards, we held that "section 812.022(2) does not violate the fifth and fourteenth amendment right to remain silent." 381 So.2d at 697.
Six years later, in County Court of Ulster County, New York v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), *716 the Supreme Court discussed the benefit and approved the use of permissive inferences like the type of jury instruction at issue in this case. The Court said:
Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime  that is, an "ultimate" or "elemental" fact  from the existence of one or more "evidentiary" or "basic" facts.... Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.
The most common evidentiary device is the entirely permissive inference or presumption, which allows  but does not require  the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. In that situation the basic fact may constitute prima facie evidence of the elemental fact. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.
....
Respondents argue ... that a statutory presumption must be rejected unless the evidence necessary to invoke the inference is sufficient for a rational jury to find the inferred fact beyond a reasonable doubt. Respondents' argument again overlooks the distinction between a permissive presumption on which the prosecution is entitled to rely as one not necessarily sufficient part of its proof and a mandatory presumption which the jury must accept even if it is the sole evidence of an element of the offense.
In the latter situation, since the prosecution bears the burden of establishing guilt, it may not rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt. But in the former situation, the prosecution may rely on all of the evidence in the record to meet the reasonable-doubt standard. There is no more reason to require a permissive statutory presumption to meet a reasonable-doubt standard before it may be permitted to play any part in a trial than there is to require that degree of probative force for other relevant evidence before it may be admitted.
Id. at 156-67, 99 S.Ct. 2213 (citations and footnote omitted). Even Justice Powell in his dissent in Allen acknowledged that the Constitution allows inferences and presumptions so long as they are more likely than not true. See Allen, 442 U.S. at 172, 99 S.Ct. 2213 (Powell, J., dissenting).
Like the United States Supreme Court, this Court has addressed this type of jury instruction on more than one occasion and upheld its validity. In Edwards, we held that section 812.022(2) was constitutional and did not violate a defendant's right to due process and privilege against self-incrimination. 381 So.2d at 697. In State v. *717 Young, 217 So.2d 567 (Fla.1968), we stated:
The appellate court is obviously under a misapprehension as to the rule of evidence respecting unexplained possession of recently stolen goods. The rule does not create a presumption of law, under which the burden is shifted to the accused to produce evidence to rebut the legal presumption of the existence of the operative facts. It is simply a rule relating to circumstantial evidence from which the jury has the right to infer guilt of larceny or of breaking and entering with intent to steal.
Moreover, the inference of guilt that the jury may infer from the unexplained possession of recently stolen goods does not arise from the possessor's failure to explain or demonstrate by evidence of exculpatory facts and circumstances that his possession of the recently stolen goods is innocent. It is the fact of possession that provides the basis for the inference of guilt.
There is, however, no mandatory duty to explain possession of the goods. The accused may explain his possession at the appropriate time, but he is not required to do so. Even if he does come forward with an explanation, the jury is not required to believe it.
It can be seen, therefore, that the rule of evidence respecting possession of recently stolen goods is no different, in kind, from the rule respecting the probative value of any other circumstantial evidence. Flight, concealment, resistance to a lawful arrest, presence at the scene of the crime, incriminating fingerprints  the whole body of circumstantial evidence relevant in a given case  are all incriminating circumstances which the jury may consider as tending to show guilt if evidence thereof is allowed to go to the jury unexplained or unrebutted by evidence of exculpatory facts and circumstances.
Some circumstantial evidence  e.g., flight or concealment  is not sufficient, standing alone, to warrant the jury in returning a verdict of guilty. In the case of possession of recently stolen goods, however, the inference that the possessor is the guilty taker is so strong that the rules of evidence permit the jury to return a verdict of guilty on this one circumstance alone if the defendant allows it to go to the jury either unexplained or with an explanation that is so palpably unreasonable and incredible that the jury rejects it entirely.
Id. at 570-71 (citations omitted).
Furthermore, like Florida, other states have addressed and approved of this type of jury instruction. In Hall v. State, 473 A.2d 352 (Del.1984), the Supreme Court of Delaware opined:
Defendant may contend that any instruction as to a rebuttable presumption which is now explained as a permissible inference arising from the possession of recently stolen goods would constitute an improper comment on the evidence.... However, such contention would be without merit. A forbidden comment on the evidence or a charge as to matters of fact would consist of comments such as an expression of opinion as to the credibility of one witness' testimony as opposed to that of another witness, or the expression of a view that one piece of evidence should be given more weight than is given to specified conflicting evidence. It is not a comment on the evidence for a judge to explain the legal significance which the law attaches to a particular factual finding provided that it is clear to the jury that the judge is not expressing an opinion as to the existence or non-existence of the underlying facts.

Id. at 356 (emphasis added); see also State v. Dixon, 127 Ariz. 554, 622 P.2d 501 (Ct. *718 App. 1980) (finding a jury instruction on possession of recently stolen property not a comment on the evidence).
In People v. Whittaker, 45 Ill.2d 491, 259 N.E.2d 787 (1970), the Illinois Supreme Court also addressed an instruction on the inference to be drawn from possession of recently stolen property. The court said:
Finally, defendants contend that People's instruction No. 2 violated their constitutional right to remain silent. The instruction states: "The Court instructs the Jury that if you find the exclusive possession, shortly after the commission of a theft or burglary, of stolen property, the proceeds of the crime, if unexplained, may of itself raise an inference of guilt of the person having such possession, sufficient to authorize a conviction in the absence of any other evidence of facts or circumstances in evidence which leave in the mind of the jury a reasonable doubt as to the guilt of such person." They argue that instructing the jury with regard to this common-law presumption, amounted to a comment on their failure to testify and, as such, constituted a violation of their fifth amendment rights as set forth in Griffin v. California[, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)]. The presumption has existed in this jurisdiction since at least 1850 and continues today as a well settled principle. The validity of its use as a jury instruction has been sustained even as to an attack identical to that raised here.
Whittaker, 259 N.E.2d at 789-90 (citations omitted); accord State v. Burch, 179 N.J.Super. 336, 432 A.2d 108 (App.Div.1981) (upholding a jury instruction on possession of recently stolen property against an attack that the instruction was an improper reference to the defendant's failure to testify).
In State v. Singleton, 210 Kan. 815, 504 P.2d 224, 226-27 (1972), the Kansas Supreme Court held that giving such a jury instruction is not erroneous where evidence has been introduced to establish that a burglary has occurred, that the stolen property has been identified, and that the defendant is the person in possession of the identified property. A Georgia appellate court in Martin v. State, 254 Ga.App. 40, 561 S.E.2d 154, 155-56 (2002), likewise held that such an instruction is permissible when a defendant is found to be in possession of stolen goods, for the defendant can always rebut the inference by explaining to the jury the reason for the defendant's possession, though the jury is certainly free to accept or reject the defendant's explanation. Similarly, in Dinkins v. State, 29 Md.App. 577, 349 A.2d 676, 679, aff'd, 278 Md. 238, 362 A.2d 91 (1976), the Maryland Court of Special Appeals upheld the constitutionality of such a jury instruction stating that it is a "traditional common law inference deeply rooted in our law."
Though the giving of this type of jury instruction was not the primary issue in the following cases, the courts explained that the inference from possession of recently stolen property is part of the sufficiency of the evidence analysis. See White v. United States, 300 A.2d 716, 718 (D.C.1973) (holding that a well-established rule provides that the unexplained or unsatisfactorily explained possession of property recently stolen permits an inference that the possessor is the person who stole it); Gaddie v. State, 400 N.E.2d 788, 791 (Ind.Ct.App.1980) (holding that possession of property shown to have been stolen, shortly after the larceny, unquestionably is a circumstance to be considered by the jury, and if the proof is made that such larceny was recently committed and there is no evidence to explain the possession of the defendants, a larceny conviction based on such evidence will be sustained on appeal); State v. Long, 243 Or. 561, 415 P.2d 171, 173 (1966) (holding that in prosecutions for *719 larceny it is the general rule that the unexplained possession of recently stolen goods raises an inference that the goods were stolen by the possessor); Commonwealth v. Hogan, 321 Pa.Super. 309, 468 A.2d 493, 496 (1983) (holding that an inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods); Smith v. State, 2 Tenn.Crim.App. 117, 451 S.W.2d 716, 718 (1969) (holding that the generally approved rule is that the unexplained possession of recently stolen goods may warrant an inference that the possessor has stolen them); Harris v. State, 656 S.W.2d 481, 483 (Tex.Crim.App.1983) (holding that where there is independent evidence of a burglary, unexplained possession of recently stolen goods is an additional circumstance of guilt which may, in combination, constitute sufficient evidence of guilt to support a conviction).
Walker argues this Court should answer the certified question in the affirmative because some of the other inferences drawn from the circumstances of a case which this Court allowed the jury to consider at the time Young was decided have since been declared impermissible comments on the evidence. He points to Fenelon v. State, 594 So.2d 292, 294-95 (Fla.1992), where this Court held that a trial court could no longer instruct a jury that it could consider flight as circumstantial evidence from which guilt could be inferred, for such instruction was an impermissible comment on the evidence. In addition, Walker notes that this Court in Whitfield v. State, 452 So.2d 548, 549 (Fla.1984), held that a trial court could no longer instruct the jury that it could consider a defendant's refusal to submit to fingerprinting as a circumstance from which guilt could be inferred, for such instruction was an impermissible comment on the evidence. Lastly, in In re Instructions in Criminal Cases, 652 So.2d 814 (Fla.1995), this Court held that a trial court could no longer instruct a jury that it could consider a defendant's inconsistent, exculpatory statements as a circumstance from which consciousness of guilt and unlawful intent could be inferred, for such instruction was also an impermissible comment on the evidence. Because of these three holdings, particularly Fenelon, the First District Court of Appeal has questioned whether the jury instruction in the instant case is also an impermissible comment on the evidence. See Weddell v. State, 780 So.2d 324, 324 (Fla. 1st DCA 2001).
Those three cases and the jury instructions involved in them are distinguishable from the jury instruction in this case. The three jury instructions in Fenelon, Whitfield, and In re Instructions in Criminal Cases are distinguishable from the possession of recently stolen property instructions in that the three factors on which those instructions were based (i.e., flight, fingerprinting, and inconsistent exculpatory statements) are extrinsic to the crime, that is, they are matters that occurred outside the parameters of the crime itself. On the other hand, possession of recently stolen property involves the fruits of the theft or burglary and is therefore inextricably intertwined with the crime itself. In light of the lengthy history of section 812.022(2)[3] and the fact that such an inference *720 has been upheld on numerous occasions by both the United States Supreme Court and this Court, it is clear that the instruction on possession of recently stolen property is not an impermissible comment on the evidence, and the First District's certified question should be answered in the negative.[4]
In this case, it is evident that Walker's conviction for burglary should be affirmed because there were ample facts from which the jury could reasonably infer that Walker had committed the burglary of Thompson's home. First, Belinda Rawls testified that Walker left her home on the night of the burglary with Run and Jit and later returned with Jit, bringing the stolen goods with them into Rawls' home. Second, Officer Matthews testified that Walker, after being advised of his rights, freely and voluntarily stated to him that he "drove the guys around for a while, then we got the stuff." Detective Strickland testified similarly. Third, though Walker testified that he never knew about the burglary, he admitted that he assisted Jit in moving two tire rims into Rawls' apartment in the early morning hours on the night of the burglary.[5] Fourth, the jury was free to make a credibility choice by disbelieving Walker's testimony[6] and believing the testimony of Officer Matthews and Detective Strickland. In sum, there was ample evidence in the record to support Walker's conviction, and the district court's affirmance of it is hereby approved.

CONCLUSION
Based on the foregoing, we answer the certified question in the negative, find that the instruction given was proper, and approve the decision of the First District in this case.
It is so ordered.
WELLS, LEWIS, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which PARIENTE, C.J., concurs.
ANSTEAD, J., dissenting.
I dissent to the majority's approval of judicial comment on the evidence contrary to this Court's longstanding policy prohibiting such comment.
*721 At the outset, it is important to make clear that the question before us is not one of constitutional dimension; rather it is one of fairness and sound judicial policy. The majority confuses these issues. We have had a proud tradition in this state of discouraging judicial comment on the evidence by the judge to the jury. In fact this is one of those issues where we can favorably compare our tradition to the prior practice in the federal courts of the trial judge "summing up the evidence" to the jury. Unfortunately, the "summing up" often indicated the trial judge's view of the merits of the case.
Florida's prohibition on judicial commentary on the evidence can be traced back to the 19th century. In Lester v. State, 37 Fla. 382, 20 So. 232, 234 (1896), this Court clearly articulated the basis of the prohibition:
[G]reat care should always be observed by the judge to avoid the use of any remark in the hearing of the jury that is capable, directly, or indirectly, expressly, inferentially, or by innuendo, of conveying any intimation as to what view he takes of the case, or that intimates his opinion as to the weight, character, or credibility of any evidence adduced. All matters of fact, and all testimony adduced, should be left to the deliberate, independent, voluntary, and unbiased judgment of the jury, wholly uninfluenced by any instruction, remarks, or intimation, either in express terms or by innuendo, from the judge, from which his view of such matters may be discerned. Any other course deprives the accused of his right to trial by jury, and is erroneous.
Recently, more than 100 years after our decision in Lester, the Third District, in Goodrich v. State, 854 So.2d 663, 665 (Fla. 3d DCA 2003), reiterated this Court's policy when it declared: "it should be noted that a trial court should avoid making a remark within earshot of the jury that is capable `directly or indirectly, expressly, inferentially, or by innuendo' of conveying any impression as to the view it takes of the case or that indicates an opinion as to the weight, character, or credibility of the evidence adduced."
The proscription against judicial comment on the evidence is designed to ensure a defendant's due process right to a fair and impartial trial before an independent and impartial jury. See, e.g., Hamilton v. State, 109 So.2d 422 (Fla. 3d DCA 1959). As Charles W. Ehrhardt's Florida Evidence, section 106.1 (2001 edition) (footnote omitted) states:
During a jury trial, the judge occupies a dominant position. Any remarks that the judge makes are listened to closely by the jury and are given great weight. Because of the credibility that the comments are given and because they would likely overshadow that testimony of the witnesses themselves and of counsel, section 90.106 recognizes that a judge is prohibited from commenting on the weight of the evidence, or the credibility of the witness, and from summing up the evidence to the jury. If such comment and summing up were permitted, impartiality of the trial would be destroyed.
Consistent with our judicial rule, section 90.106, Florida Statutes (2004), provides that "[a] judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused."
This Court has consistently honored the policy announced in Lester in a variety of contexts. In Whitfield v. State, 452 So.2d 548 (Fla.1984), this Court held that a jury instruction on the refusal to submit to fingerprinting as a circumstance from which consciousness of guilt could be inferred was an impermissible comment on the evidence. In Whitfield this Court indicated *722 its concern about recognizing any exceptions to the Lester rule that a trial court may not comment on the evidence. Otherwise, the exceptions would swallow the rule.
Indeed, in Fenelon v. State, 594 So.2d 292 (Fla.1992), this Court struck down the so-called "flight exception" to the no comment rule, finding it inconsistent with the important policy concerns behind the rule:
Evidence that a defendant was seen at the scene of the crime, leaving the scene, or fleeing from the scene, in most instances, would be relevant to the question of the defendant's guilt. Such evidence, like any other evidence offered at trial, is weighed and measured by its degree of relevance to the issues in the case. The flight instruction, however, treats that evidence differently from any other evidence. It provides an exception to the rule that the judge should not invade the province of the jury by commenting on the evidence or indicating what inferences may be drawn from it.

Especially in criminal cases, the trial court should take great care not to intimate to the jury the court's opinion as to the weight, character, or credibility of any evidence adduced.
594 So.2d at 294 (emphasis supplied) (quoting Whitfield, 452 So.2d at 549). In Fenelon, [W]e further explained, "we can think of no valid policy reason why a trial judge should be permitted to comment on evidence of flight as opposed to any other evidence adduced at trial." Id. We concluded that the better policy was "to reserve comment to counsel, rather than to the court." Id. at 295.
Subsequently, in In re Instructions in Criminal Cases, 652 So.2d 814, 815 (Fla.1995), this Court held that a jury instruction by the trial court stating that "[i]nconsistent exculpatory statements can be used to affirmatively show consciousness of guilt and unlawful intent," constituted a comment on the evidence and should no longer be given.
Similarly, in Barfield v. State, 613 So.2d 507, 508 (Fla. 1st DCA 1993), the First District reversed a conviction for petit theft on the ground that a jury instruction regarding the inference arising from the sale of recently stolen property at a price substantially below fair market value was, like the flight instruction in Fenelon, an impermissible comment on the evidence. And, in Fecske v. State, 757 So.2d 548 (Fla. 4th DCA), review denied, 776 So.2d 276 (Fla.2000), the Fourth District Court of Appeal reversed a criminal conviction because the trial court gave a special instruction which the district court held constituted a comment on the evidence.
While the court's special instruction [that, as a general rule, lack of affirmative medical treatment of the victim, whose initial injury was proximately caused by the defendant's action, does not constitute an intervening cause relieving the defendant of criminal responsibility for the victim's death] accurately restated this law, Fecske argues that the instruction constituted an improper comment on the evidence by the court. We agree. As the state conceded at oral argument, causation is an element of UBAL manslaughter under section 316.193. Thus, Fecske should have been allowed to defend that the pneumonia, and not his negligence, caused the victim's death. By giving the special instruction, however, the court essentially directed a verdict on this defense in favor of the state.
757 So.2d at 549-50. This Court subsequently denied review of the Fecske decision. State v. Fecske, 776 So.2d 276 (Fla.2000).
In all of these decisions the courts have consistently emphasized that the rationale for not permitting comment on the evidence *723 by the court is that the jury might be improperly influenced and its impartiality and independence threatened. See Whitfield v. State, 452 So.2d 548, 549 (Fla.1984) ("A trial court should scrupulously avoid commenting on the evidence in a case. Especially in a criminal prosecution, the trial court should take great care not to intimate to the jury the court's opinion as to the weight, character, or credibility of any evidence adduced."); Hamilton v. State, 109 So.2d 422, 424-25 (Fla. 3d DCA 1959) ("The dominant position occupied by a judge in the trial of a cause before a jury is such that his remarks or comments, especially as they relate to the proceedings before him, overshadow those of the litigants, witnesses, and other court officers. [I]t thereby destroys the impartiality of the trial to which the litigant or accused is entitled.").
Consistent with the judicial disapproval of the wide variety of comments that have been discussed in our case law, the judges of the First District Court of Appeal have now at least twice candidly observed that they see no distinction between the flight instruction condemned in Fenelon and the instruction at issue in this case. See Weddell v. State, 780 So.2d 324, 324 (Fla. 1st DCA 2001) ("Paraphrasing the opinion in Fenelon v. State, 594 So.2d 292, 294 (Fla.1992), we can think of no valid policy reason why a trial judge should be permitted to comment on the evidence of possession of recently stolen property as opposed to any other evidence adduced at trial."). Those judges were sufficiently troubled by this inconsistency in our law that they have twice certified this issue to this Court as one of great public importance.
It is apparent that the judges on the district courts recognize the conflict between our policy statements in cases like Fenelon, discouraging judicial comment on the evidence, and our continuing adherence to the practice of allowing judges to comment on the evidence of possession of stolen property. Judges of both the First District and the Fourth District have repeatedly certified this issue for our review while pointedly observing that they could see no meaningful difference between the two situations. See Washburn v. State, 683 So.2d 533, 534 (Fla. 4th DCA 1996) (Pariente, J., dissenting) ("[O]ur supreme court in Fenelon v. State, 594 So.2d 292 (Fla.1992), expressly disapproved of a jury instruction on flight as an impermissible comment on the evidence. In light of the reasoning of Fenelon, I would certify the question."). I agree with these concerns. In effect, we are taking inconsistent positions by allowing comments on the evidence in some instances but not in others.
In fact, as noted in Washburn v. State, 683 So.2d 533, 534 (Fla. 4th DCA 1996) (Pariente, J., dissenting), this Court in State v. Young, 217 So.2d 567 (Fla.1968), specifically analogized evidence of flight to evidence of unexplained possession of recently stolen property. In Young, we declared:
It can be seen, therefore, that the rule of evidence respecting the possession of recently stolen goods is no different, in kind, from the rule respecting the probative value of any other circumstantial evidence. Flight, concealment, resistance to a lawful arrest, presence at the scene of the crime, incriminating fingerprints  the whole body of circumstantial evidence relevant in a given case  are all incriminating circumstances which the jury may consider as tending to show guilt if evidence thereof is allowed to go to the jury unexplained or unrebutted by evidence of exculpatory facts and circumstances.
217 So.2d at 571. In other words, this Court too, like the judges of the district court, has expressly noted the lack of any meaningful distinction between the two judicial *724 comments on the evidence. Today, the majority opinion ignores this Court's prior analysis.
The majority simply fails to explain why we would approve some comments on the evidence while not permitting others. Both our policy and good sense should prohibit such practice. For example, in many trials the State may present evidence that the defendant confessed. Obviously, along with such evidence as eyewitness testimony by an unbiased third party, a confession is pretty strong stuff. In fact, a jury may infer the guilt of the accused from such a confession. But we do not authorize trial judges to say that to the jury, because we want jurors to operate independently and fairly in our adversary system, and make up their own minds about what evidence is "pretty powerful stuff."
Let us consider the case under review. What the judge has told the jury is that evidence has been received that the defendant had possession of the property alleged to have been stolen by him, and that they may properly infer simply from his possession of that property that he stole it. This is pretty powerful stuff coming from the judge in charge of the proceedings, whose primary responsibility is to advise the jury of how it is to go about deciding the guilt or innocence of the accused. In fact, the U.S. Supreme Court has openly acknowledged that the practical effect of such an instruction is to shift the burden of proof to the defendant and to remove the presumption of innocence so valued in our justice system. See Barnes v. United States, 412 U.S. 837, 843-46, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).
Of course evidence of possession of recently stolen property is relevant to the issue of whether the defendant stole the property. That is why the State is happy to have that evidence and to present it in court and contend to the jury that it is strong evidence of guilt. In fact, virtually all of the evidence admitted at a trial falls into the same category, since any evidence must be deemed relevant and material to the issues being tried in order to be admitted. But it is up to the jury, aided by the parties' arguments, to sort the evidence out. When we permit the judge to interfere with this independent role of the jury by telling the jury to pay particular attention to a particular piece of evidence, we are undermining the unique and independent role of the jury, a treasured role in our justice system. In effect we are undermining the right to a jury trial by approving judicial interference with the jury's independent function.
I believe our policy of prohibiting judges from commenting on the evidence is essential to maintaining the neutrality of the judiciary and the jury, and the trend towards disapproving such comments is a sound trend based upon well-established policy concerns for the fairness of our justice process. The question before us is whether we are going to adhere to our precedent and continue that trend, or whether we are going to approve unsound practices just because they have been around awhile and may meet constitutional muster. In other words, the real question is whether we are really serious about our announced policy of discouraging judicial comment on the evidence, or are we going to "wink" at the policy by continuing to approve unwarranted exceptions to its application. Unfortunately, the majority ignores the impact of instructions commenting on the evidence on the role of the judge as a neutral arbiter of disputes, and the improper impact such comments have on the neutrality and independence of the jury charged with deciding the case.
I think we should stick by our sound policy of discouraging judicial comment on the evidence, and consistently reject exceptions *725 to the policy. Let the parties present their evidence to the jury and advocate for its weight and importance, but let the jury sort it out in the context of the individual case. That is what our jury system is all about. That was why we condemned judicial comment on the evidence in 1896 in Lester and why we should be standing by that policy today.
PARIENTE, C.J., concurs.
NOTES
[1] Section 810.02(3), Florida Statutes (2001), states:

Burglary is a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a: ...
(b) Dwelling, and there is not another person in the dwelling at the time the offender enters or remains....
[2] Six states have nearly identical theft or organized crime statutes. See Ala.Code § 13A-8-16 (2003); Ariz.Rev.Stat. § 13-2305 (2004); Ky.Rev.Stat. Ann. § 514.110 (2002); La.Rev.Stat. Ann. § 15:432 (West 2004); N.Y. Penal Law § 165.55 (Consol.2003); Utah Code Ann. § 76-6-402 (2003).
[3] The history of section 812.022(2) was discussed by the Fourth District in Jackson v. State, 736 So.2d 77 (Fla. 4th DCA 1999):

Section 812.022(2) was enacted by the 1977 legislature as part of the overall revision of the criminal statutes relating to theft and stolen property. See Ch. 77-432, Laws of Fla. However, the inference was not new to Florida law. An identical inference had been part of Florida common law since the nineteenth century. In McDonald v. State, 56 Fla. 74, 47 So. 485, 486 (1908), the supreme court stated the general rule that a "verdict of guilty of larceny may be found from the unexplained possession of goods recently stolen."
Id. at 81-82, 47 So. 485.
[4] Consider what uncertainty might be created if we were to find that such an inference is an impermissible comment on the evidence. This affirmative answer would lead to the elimination of the numerous other inferences in Florida criminal law. See, e.g., § 812.022(1), Fla. Stat. (2003) (providing that when a person uses false identification to lease personal property, this gives rise to an inference that the person used or will use the property to commit a theft, unless satisfactorily explained); § 812.022(3) (providing that when a person buys or sells property at a price substantially below fair market value, this gives rise to an inference that the person buying or selling knew the property was stolen, unless satisfactorily explained); § 812.022(4) (providing that proof of purchase or sale of stolen property by a dealer in property creates inference that dealer knew the property was stolen, unless satisfactorily explained).
[5] While Walker was not in direct possession of the stolen goods at the time of his arrest, since they were stashed at Rawls' apartment, the trial court did not err in giving the instruction on possession of recently stolen property at Walker's trial. As the First District stated in Scobee v. State, 488 So.2d 595, 598 (Fla. 1st DCA 1986), "The `exclusive' requirement does not mean that defendant's possession must be separate from the possession of all other persons. The joint possession of two or more persons acting in concert is `exclusive' as to any one of them."
[6] "The reasonableness of the defendant's explanation is generally a question of fact for the jury." Smith v. State, 742 So.2d 352, 355 (Fla. 5th DCA 1999); see Young, 217 So.2d at 570.