947 So.2d 609 (2007)
The STATE of Florida, Petitioner,
v.
Gregory RANDOL, Respondent.
No. 3D06-2126.
District Court of Appeal of Florida, Third District.
January 10, 2007.
*610 Bill McCollum, Attorney General, and Angel L. Fleming, Assistant Attorney General, for petitioner.
Mark Seiden, Miami, for respondent.
Before FLETCHER, SHEPHERD and SUAREZ, JJ.
SHEPHERD, J.
By petition for writ of certiorari the State challenges a trial court order excluding from evidence three latent fingerprint reports prepared by Latent Examiner Gilbert Tamez, which physically link four individuals, including the respondent-defendant, Gregory Randol, to one of the alleged criminal venues in a multi-faceted RICO-conspiracy burglary and grand theft prosecution, on the ground that all the reports were furnished by the State after a court-ordered discovery deadline. While permitting Tamez to testify about the content of the reports as to all but defendant, the order nevertheless precludes Tamez from testifying to the content of the report that implicates defendant, effectively precluding the State from presenting any physical evidence of defendant's presence at the crime scene. Although the State's preparation and prosecution of this case has been generously described by the trial court below as one of "inadvertent gross[] negligence," we nevertheless conclude the trial court departed from the essential requirements of law when it barred the State from offering any of the latent fingerprint reports at the trial of this case and precluded Tamez from referencing or testifying to the content of the Randol report without taking the additional required step of considering whether the State's discovery violations resulted in prejudice to the defense. Accordingly, we grant the petition and quash the order under review.

FACTS
This case is one of seven cases charged by the State since late 1997 arising out of an alleged conspiracy between defendant and others to operate a burglary and grand theft ring during 1996 and 1997. Based upon the record before us, it appears the case as to defendant commenced in 1997 when police were called to investigate a warehouse burglary. Upon arrival at the warehouse, police discovered computer equipment from an earlier robbery that they associated with the conspiracy. The Crime Scene Report inventory done on the date of the warehouse burglary reports recovery of a firearms magazine, a soda can, a beer bottle, and several computer boxes, all with latent fingerprints. Latent comparison reports prepared by Tamez in 1998 identified the fingerprints on some of the recovered items to three known suspects. Although defendant's latent prints existed on the soda can, defendant was not then a known suspect, and therefore no evaluation of the prints lifted from the soda can was possible.[1] The items were impounded by police pursuant to protocol.
In 2002, defendant was identified as a suspect in the conspiracy based upon information provided to the State Attorney in that year by the Office of the United States Attorney. He then was arrested along with two co-defendants and charged with six counts of RICO conspiracy, violation of RICO, kidnapping with a weapon, armed burglary, and grand theft in the *611 first degree.[2] For the next four years, the case lumbered slowly toward trial, hampered by the death of the lead detective shortly after the information was filed and multiple prosecutorial personnel re-assignments.
Trial was first set for February 13, 2006. On January 17, 2006, less than a month before trial, the State provided the defense with an Amended Discovery Exhibit. This discovery exhibit, listing twenty-three additional witnesses, seven deposition transcripts, and two police reports, was filed nearly three and a half years after defendant had, in August 2002, elected to avail himself of the discovery process afforded him by Florida Rule of Criminal Procedure 3.220(a), which requires the State to disclose all pertinent discovery within fifteen days of the defendant's election to participate. See Fla. R.Crim. P. 3.220(b)(1).[3] It appears that the prosecutor, the third assigned to the case, had begun to become aware of the other six related cases in the Office of the State Attorney. Defendant filed a motion for State-charged continuance, or, in the alternative, to prohibit the use of the January 17, 2006 discovery materials and witnesses, and for a court ordered discovery deadline.
Understandably frustrated, the trial court, after conducting the required Richardson[4] hearing, cured the evident prejudice to defendant by vacating the order setting the case for trial and ordering the State "to provide the Defendant with any further discovery materials by March 23, 2006." See State v. Del Gaudio, 445 So.2d 605, 610 (Fla. 3d DCA 1984)("If the discovery material and information comes too late to permit the trial to proceed as scheduled, the prejudice is extinguished when the trial is continued."). Aware of the complexity of the case and cognizant of the multiple personnel changes in the Office of the State Attorney, the trial court found that while the State's failure to comply with the early discovery obligations imposed upon it by Rule 3.220 was substantial and prejudicial, the violation was "inadvertent" and "grossly negligent" but not "willful" or "intentional" within the parameters established by Richardson. Notably, the January 17, 2006 Amended Discovery Exhibit included, for the first time, Tamez as a potential witness.
On March 23, 2006, the State provided additional discovery, this time forty-one more witnesses, two depositions, two sworn statements, five photo line-ups, thirty-eight pages of police reports, fifteen property receipts, a vehicle rental agreement, prison records for two witnesses for the prosecution, photographs, and two surveillance videotapes. Defendant moved for yet another Richardson hearing, and sought to exclude the concededly substantial additional filing despite the fact that it technically met the discovery deadline. Defendant argued that "[s]imply because this Honorable Court set a deadline for discovery materials, as requested by the defense, does not preclude the fact that the newly provided discovery materials should have been provided to the defense in a timely fashion." Although the case *612 had not been re-set for trial, defendant argued that "[t]he prosecution has once again violated the provisions of Rule 3.220 of the Florida Rules of Civil Procedure by surprising defendant and impeding his ability to prepare for trial by providing a tremendous amount of untimely discovery." The Crime Scene Report inventory of the items on which latent fingerprints were found at the time of the 1997 warehouse burglary was divulged, for the first time, in this disclosure. The court set defendant's motion for hearing for April 18.
On April 17, the day before the scheduled hearing, the State provided defendant with yet another amended discovery exhibit, a latent fingerprint report authored by Tamez on April 11, 2006, stating that on April 6, 2006, he had performed a comparison evaluation of the fingerprints on the soda can impounded in 1997 and found them to be defendant's. The print comparison had been prompted by a post-March 23 defense deposition notice to Tamez in the instant case,[5] which caused Tamez for the first time to become aware of defendant's existence and his alleged participation in the burglary and grand theft ring. The assistant state attorney assigned to the case clearly had not previously reviewed the files pertinent to the prosecution of the other alleged co-conspirators with sufficient diligence to consider the possibility that the warehouse prints might provide physical evidence of defendant's guilt.
At the hearing on the next day, the trial court, again displaying remarkable restraint under the circumstances, denied the motion to exclude the March 23 discovery exhibit despite its extraordinary volume. Although supplied in the last hours of the discovery period, the trial court found that the State "[had] compl[ied] at least to the letter of the Court's order, [although] maybe not in spirit[,]" and, again, that the actions of the prosecution "[were] not intentional." However, the trial court found that the April 11 fingerprint report was prepared almost one month after the discovery deadline, and therefore excluded it as a "patent violation of the discovery deadline established by this court." Tamez also was precluded from referencing or testifying to the content of the report. The decision was made without a Richardson hearing because, in the words of the trial judge, "the prosecution [already has] acknowledged the Court's previous ruling by stating [in a recently filed pleading] `Because the Defendant has already established . . . the State failed to comply with its discovery obligations, there is no need to have another Richardson hearing to establish this fact.'"
On May 5, 2006, in a memorandum of clarification directed to the trial court, the State requested that the written order memorializing the results of the April 18 hearing expressly identify the April 11 report by the date of its authorship because "Examiner Tamez authored three (3) Latent Fingerprint Reports," referencing the dates of Tamez's 1998 submissions. Defendant again cried foul, claiming he had never received or heard of the reports. As if it had not bungled the handling of the prosecution of this case enough, the State was unable to indicate in any of its multitudinous, yet very specific, discovery exhibits that these reports had been produced. As a result, at a hearing held on May 24, 2006, the trial court precluded the State from offering the 1998 reports into evidence on the ground that they too were produced late. However, because Tamez himself had been timely listed as a potential witness, *613 the court determined not to preclude Tamez from testifying to the results of the 1998 evaluations so long as he refrained from referencing the existence of the reports. At this hearing, the trial court set the case for trial eight months later, for February 19, 2007, partially to accommodate defense counsel's professional commitments.
The State by certiorari seeks redemption from its multiple missteps and oversights. While we, like the trial court, do not in any way condone or approve the State's conduct in this case, we nevertheless provide relief.

Analysis
As we read the progression of rulings in this case, of the trial court decisions turned solely on whether disclosure was made before or after the court-ordered discovery deadline. Because the latent fingerprint reports were all disclosed after March 23, 2006, they were excluded. Because Examiner Tamez was disclosed before that date, he could be called and testify to the extent of his knowledge as it existed before March 23, 2006, including the results of the 1998 reports. Although Richardson prejudice was argued by defendant, the trial court's order does not reflect any consideration of whether or not defendant was, in fact, prejudiced. To the contrary, the transcript of the April 18 hearing expressly eschews the need for a Richardson hearing concerning the April 11, 2006 report. In this as well as in failing to conduct a Richardson hearing concerning the subsequent disclosure of the 1998 fingerprint reports, the trial court erred.
Our case law is clear that the failure of either the State or a defendant to comply with a discovery deadline, standing alone, is not dispositive for purposes of determining whether the sanction of exclusion of a witness or other evidence is appropriate. "[A] trial judge must do more than simply ascertain that a discovery rule has been violated. The inquiry must involve a determination of whether the violation resulted in substantial prejudice to the opposing party." Hernandez v. State, 572 So.2d 969, 971 (Fla. 3d DCA 1990)(quoting Fedd v. State, 461 So.2d 1384, 1385 (Fla. 1st DCA 1984))(reversing a conviction based upon exclusion of testimony of defense witness for failure of defense to include him on witness list without required prejudice determination). See also State v. Muldowny, 871 So.2d 911, 914 (Fla. 5th DCA 2004)(State's failure to comply with discovery order requiring production of documentation demonstrating that breath testing machine met statutory requirements "caused prejudice and harm to defendants' ability to . . . properly prepar[e] their cases for trial."); Miller v. State, 636 So.2d 144, 149 (Fla. 1st DCA 1994)(accord)(internal citations omitted); Taylor v. State, 643 So.2d 1122, 1123 (Fla. 3d DCA 1994)(noting that failure to list a witness was neither willful nor substantial and lacked a credible claim of prejudice); Duarte v. State, 598 So.2d 270, 271-72 (Fla. 3d DCA 1992)(accord). As the trial court noted, whether a remedy such as exclusion should be imposed depends on "the totality of the circumstances." Miller, 636 So.2d at 149. However, "[t]he key question in a situation in which a discovery violation is alleged is whether or not the defendant was significantly prejudiced by the state's failure to produce the requested evidence." Jones v. State, 360 So.2d 1293, 1296 (Fla. 3d DCA 1978).[6] Prejudice in this context means the discovery violation must prevent the defendant from properly preparing for trial. See, e.g., Scipio v. State, 928 So.2d 1138, 1147 (Fla.2006); Wilcox v. State, 367 So.2d 1020, 1023 (Fla. 1979). Ordinarily, a Richardson hearing *614 must be commenced to determine whether the complaining party has been prejudiced. Scipio, 928 So.2d at 1147 (quoting State v. Schopp, 653 So.2d 1016, 1021 (Fla. 1995))("[O]nly if [an] appellate court can say beyond a reasonable doubt that [the affected party] was not procedurally prejudiced by the discovery violation can the error be considered harmless" thus excusing the failure of a trial court to conduct a Richardson hearing.).
In this case, the trial court cured the substantial discovery violation resulting from the State's filing of the January 17, 2006 Amended Discovery Exhibit by vacating the order setting the case for trial and granting defendant's motion to impose a discovery deadline on the State. The State conceded defendant was entitled to relief. At defendant's request, the case was not even re-set for trial. Two months later, on March 23, 2006, the State delivered an additional, voluminous discovery exhibit of at least equal burden, and, by the time of the April 18 hearing scheduled to hear defendant's protest of that filing, yet another even more incriminating exhibit  the freshly prepared report of defendant's fingerprints at the scene. This time, the trial court did not commence another Richardson hearing because, as previously noted, "the prosecution [already has] acknowledged the Court's previous ruling by stating `Because the Defendant has already established . . . the State failed to comply with its discovery obligations, there is no need to have another Richardson hearing to establish this fact.'" This analysis is legally incorrect. Although there was considerable reason for concern about the prosecutor's conduct in her preparation and handling of this case  i.e., whether her actions were "inadvertent or wilful"  that determination is significant largely for the purpose of considering whether personal sanctions against the prosecutor were indicated. See supra n. 5. Rather, the key question remained: whether or not there was procedural prejudice to defendant by the State's violation of the March 23, 2006 deadline by the delayed production of the April 11, 2006 fingerprint report as well as the even later production of the 1998 reports. See Scipio, 928 So.2d at 1149("procedural prejudice and substantive prejudice are not the same"). Because the trial court failed to consider and rule on this question, we quash the order under review and remand for further proceedings.
Writ granted; order quashed; case remanded for proceedings consistent herewith.
NOTES
[1] The defense points out that this case represents defendant's first alleged criminal involvement.
[2] According to the State, one of these co-defendants has entered into a plea agreement with the State and will testify against defendant at the trial of this case. The State has nolle prossed the charges against the other. As a result, the charges presently remain pending only against defendant.
[3] Prior to the filing of this Amended Discovery Exhibit, the State previously had listed fewer than twenty witnesses. Remarkably, the State found it necessary to amend its initially timely filed September 2002 discovery compliance some eleven times in the next twelve months to achieve just that degree of compliance.
[4] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[5] Because of the State's status as the miscreant litigant, the trial court imposed the March 23, 2006 discovery deadline only on the State. The defense was therefore at liberty to continue its discovery against the State after the March 23, 2006 discovery deadline.
[6] Indeed, we recently have held that "the reasons for the delay in furnishing discovery, that is, was the State's violation inadvertent or willful, are relevant only for the purpose of subjecting counsel for the State to an appropriate sanction pursuant to Florida Rule of Criminal Procedure 3.220(j)(2) (now 3.220(n)(2))." State v. Rodriguez, 907 So.2d 564 (Fla. 3d DCA 2005). Under this rule, the sanctions "may include . . . contempt proceedings against the attorney . . . as well as the assessment of costs incurred by the opposing party when appropriate." Id.