# Third District Court of Appeal

## State of Florida

Opinion filed April 6, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2323
Lower Tribunal No. 04-5999
_____

## The State of Florida,
Petitioner,

vs.

## British Moss,
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Yvonne Colodny, Judge.

Pamela Jo Bondi, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for petitioner.

Rae Shearn; Christopher A. Grillo, (Fort Lauderdale), for respondent.

Before SHEPHERD, SALTER and FERNANDEZ, JJ.

FERNANDEZ, J.

The State of Florida petitions this Court for a writ of certiorari to review an order rendered by the trial court which denied, in part, the State's motion to compel discovery. We agree that the trial court's order departs from the essential requirements of law because the respondent, British Moss, never presented the trial court a request and a showing for good cause. Accordingly, we grant the writ.

Moss was indicted for first-degree murder, as well as armed robbery with a firearm. Intending to seek the death penalty, the State moved to compel discovery of all defense witnesses Moss was going to call at both the guilt and penalty phases. In its motion, the State contended that it was entitled to this discovery, pursuant to Florida Rule of Criminal Procedure 3.220. The State asked Moss to list his witnesses and provide notes, reports and raw data regarding any testing from any expert Moss intended to call. The State also noted that it was not seeking any work product.

Moss filed a response, requesting that the trial court deny the motion and defer the penalty phase discovery until after the guilt phase. Although Moss acknowledged that the State indicated it was seeking the death penalty and that Moss identified experts he planned to call at the penalty phase, Moss argued that there was no authority that required compliance with rule 3.220 prior to trial regarding the penalty phase.

At a hearing on the State's motion, the State contended that it was entitled to discovery regarding defense witnesses and experts, regardless of the phase of trial at which the defense intended to present that evidence prior to trial. Moss argued that the decision regarding when he needed to disclose penalty phase discovery was a "discretionary call" by the trial court. Moss further objected to disclosure on Fifth Amendment grounds.

The trial court acknowledged the State's need for information regarding the defense's experts in order to prepare for trial. However, the court stated that the defense would be required to disclose the information "as soon as the defense commits to an expert, if one is needed, if a conviction is obtained." The trial court also stated that if a conviction of first-degree murder was obtained by the State, it would not begin the penalty phase immediately but would give the State time to adequately prepare for the penalty phase.

Thereafter, Moss moved for an order requiring that the State provide a statement of particulars regarding the aggravators it would rely on at the penalty phase. The trial court granted the motion, and the State filed a notice of particulars, stating that it planned to rely upon a prior violent felony, during the course of a felony, and for pecuniary gain aggravators.

The State then renewed its motion to compel discovery of all defense witnesses and documents, based on this Court's decision in <u>Bailey v. State</u>, 100 So.

3d 213 (Fla. 3d DCA 2012), which the State contended made it clear that rule 3.220 applied to production of discovery regarding penalty phase evidence prior to trial and that respondent had to show good cause to support any request to delay disclosure. The State reaffirmed its position that it would not seek work product and would agree to defer production of Moss' statements, but that any information that was alleged to fall in either of these categories should be submitted for in camera review.

Moss filed his response and acknowledged that he had been evaluated by Dr. Heather Holms, Dr. Jethro Toomer, Dr. Michele Quiroga, Dr. Rebecca Cooper, and Dr. Brad Fisher. He further stated that he planned to seek another expert because Dr. Fisher had died, and he planned to call three of these experts at the penalty phase. He acknowledged that Bailey existed but argued that he should not be required to provide discovery because in the past, he had routinely violated rule 3.220, and he believed that a break between the guilty and penalty phases was proper to allow the jury a "cooling off period."

At the hearing on the motion, the trial court stated that it would require Moss to name his experts and produce their curriculum vitaes, but that it would not require discovery on the work the experts had done until a later date. Moss later indicated he was ready for trial, so the State asked the trial court to set a pretrial deadline for disclosure of penalty phase information. The trial court then stated

4

that it would require disclosure at the guilt phase, after the jury retired to deliberate. In its written order, the trial court indicated that Moss had shown good cause that the discovery was not yet ripe. The State now seeks the issuance of a writ of certiorari quashing this order.

According to Florida Rule of Criminal Procedure 3.220(d):

(1) If a defendant elects to participate in discovery, either through filing the appropriate notice or by participating in any discovery process, including the taking of a discovery deposition, the following disclosures shall be made:

(A) Within 15 days after receipt by the defendant of the Discovery Exhibit furnished by the prosecutor pursuant to subdivision (b)(1)(A) of this rule, the defendant shall furnish to the prosecutor a written list of the names and addresses of all witnesses whom the defendant expects to call as witnesses at the trial or hearing. When the prosecutor subpoenas a witness whose name has been furnished by the defendant, except for trial subpoenas, the rules applicable to the taking of depositions shall apply.

(B) Within 15 days after receipt of the prosecutor's Discovery Exhibit the defendant shall serve a written Discovery Exhibit which shall disclose to and permit the prosecutor to inspect, copy, test, and photograph the following information and material that is in the defendant's possession or control:

(i) the statement of any person listed in subdivision (d)(1)(A), other than that of the defendant;

(ii) reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons; and

5

(iii) any tangible papers or objects that the defendant intends to use in the hearing or trial.

Florida law holds that this provision applies to information regarding witnesses and evidence that a defendant intends to present at the penalty phase. Abdool v. State, 53 So. 3d 208, 219-20 (Fla. 2010); Bailey v. State, 100 So. 3d 213, 216 (Fla. 3d DCA 2012); Davis v. State, 73 So. 3d 304, 308 (Fla. 1st DCA 2011); State v. Clark, 644 So. 2d 556 (Fla. 2d DCA 1994); Booker v. State, 634 So. 2d 301 (Fla. 5th DCA 1994). In addition, rule 3.220(k) allows a trial court to alter the timing of disclosure but only upon a showing of good cause. Times Pub. Co. v. State, 903 So. 2d 322, 326-27 (Fla. 2d DCA 2005). Even when presented with a motion asserting good cause, a trial court still cannot find good cause without providing a full and fair opportunity to be heard and serious consideration of the party's opposition. Demings v. Brendmoen, 158 So. 3d 622 (Fla. 5th DCA 2014).

The record does not reflect that Moss asked the trial court to extend the time for him to comply with his discovery obligations. Because Moss did not request relief under rule 3.220(k) and did not show good cause, the trial court departed from the essential requirements of law. Times Pub. Co., 903 So. 2d at 326-27.

Moreover, even had Moss asked for additional time and tried to show good cause, the trial court still departed from the essential requirements of law. In its order, the trial court found good cause to delay disclosure due to Moss' contention

6

that the disclosure of penalty phase information was not ripe. Florida Rule of Criminal Procedure 3.220(d) required Moss to disclose his witnesses within fifteen days of receipt of the State's discovery request. In addition, rule 3.220(j) required Moss to disclose any additional witnesses and evidence "promptly" and "in the same manner as required under" rule 3.220 "for initial discovery" once he discovered the information. At the renewed motion to compel hearing, Moss acknowledged that he had already decided he would be calling his experts at the penalty phase. Thus, Moss' requirement to provide the discovery was overdue according to rule 3.220 and according to the previously cited Florida cases that hold the rule applies to the penalty phase. See Abdool, 53 So. 3d at 219-20; Bailey, 100 So. 3d at 216; Davis, 73 So. 3d at 308; Clark, 644 So. 2d at 556; Booker, 634 So. 2d at 301.

In sum, the trial court's order denying the State's motion to compel departs from the essential requirements of law, and it prejudices the State in a manner that cannot be remedied on appeal. As the State contends, the state has a legitimate interest in having a single jury at the guilty and penalty phases, as well as a legitimate interest in excluding from that jury persons who cannot fairly consider issues regarding a death sentence. Lockhart v. McCree, 476 U.S. 162, 175-82 (1986). In addition, the Florida Supreme Court has rejected claims that separate juries should be employed at the guilt and penalty phases. Melton v. State, 638 So.

7

2d 927, 929 (Fla. 1994); <u>Riley v. State</u>, 366 So. 2d 19, 21 (Fla. 1978). Consequently, the State is legally entitled to question the venire members regarding the mitigation Moss plans to present and exclude from the jury those potential jurors whose prejudices and biases would prevent them from considering the death penalty. Without the State having knowledge of the types of mitigation Moss might present, it will not be able effectively to question the venire members. At that point, the State would have no remedy. We thus grant the petition for writ of certiorari and quash the portion of the trial court's order that denied in part the State's motion to compel discovery.

Petition granted; order quashed in part.

SALTER, J., concurs.

SHEPHERD, J., dissenting

I respectfully dissent. This is a common, ordinary discovery dispute in a criminal case over the timing of production of the work product of expert witnesses, distinguished only by the fact that it is a case in which the State seeks the death penalty. That fact, however, does not expand our authority to insert ourselves into the discretionary decisions of the trial judge in her management of the case to trial. British Moss concedes that most, if not all, of the contested material will be producible in the penalty phase of this case, if there is one. He argues, however, that he will be irreparably prejudiced in the guilt phase of the trial if he is compelled to produce the documents pre-trial, as is sought by the State. The State argues, to the contrary, that it needs these documents to (1) select a death qualified jury and (2) be properly prepared for and minimize the delay between the guilt and penalty phases of the trial. The State has no intention of introducing the materials in the guilt phase trial; nor does the State need this discovery to prepare its own experts for a putative penalty stage. The State does not plan to call any experts if the case reaches that stage.

The State expressly recognized below that the trial court had "the 'authority under Rule 3.220(k) and (l), upon good cause shown, to control the time and scope

of reciprocal penalty phase discovery in order to protect the substantial rights of the defendant accused." This court likewise recognizes the discretion that lies in the trial judge in the application of Florida Rule of Criminal Procedure 3.220. See Bailey v. State, 100 So. 3d 213, 216 (Fla. 3d DCA 2012) ("[R]ule 3.220 also allows trial courts to exercise their discretion regarding the extent of disclosure and times for compliance upon a showing of good cause or materiality." (citing Rule 3.220 (f), (k))). The majority nevertheless finds "the trial court's order departs from the essential requirements of law because the respondent, British Moss, never presented the trial court a **request** and a showing for good cause." Maj. Op. at p. 1 (emphasis added). The majority misunderstands the rule. The order in this case was rendered pursuant to subsection (k) of Rule 3.220. That rule, titled "Court May Alter Times," states simply "The Court may alter the times for compliance with any discovery under these rules for good cause shown." The formality the majority reads into the rule is non-existent. It is this error, it seems,[1] that impels the majority to overlook the arguments made by the defendant in his responses to the State's motions to compel. These arguments may be summarized as follows:

---

[1] That the error was not a mere subconscious inadvertence is confirmed by the fact that the majority later reiterates its assertion that the lack of a "request" was the fatal flaw in the defense opposition to the State's motion to compel. The majority writes, "Because Moss did not **request** relief under rule 3.220(k) and did not show good cause, the trial court departed from the essential requirements of law." Maj. Op. at p. 6 (emphasis added)

1.  The defense, pursuant to an earlier court order, had recently provided the State with a comprehensive Death Penalty Waiver memorandum, which, according to the defense, "paraphrased the psychological opinions of the [defense] experts in a very distinct statement." The defense made the memorandum available to the trial court, but it is neither filed in the record nor did the State seek to bring it (if it was jurisprudentially possible) to this court via an appendix;

2.  The material requested includes both privileged attorney-client and work-product information, including mental health testing done on the defendant, which is not disclosable until the penalty phase of the trial, should the defendant be convicted of the crimes charged;

3.  The act of compelling defense counsel to disclose a group of documents, even with redactions, will supply the prosecution with a window into the thinking of the defense, inter alia, by revealing defense counsel's assessment of the relative importance of the documents produced and of their significance as a collection; and

4.  The argument offered by the State that pre-trial production will enable the State to more rapidly present a rebuttal case in the penalty phase undermines the privilege against self-incrimination and due process and places defense counsel in the untenable position of choosing whether to risk not preparing for the penalty phase at all in order to preserve these fundamental constitutional rights.

Upon consideration, the trial court resolved the competing interests of the parties by the following "Discovery Order:"

1. Defense must turn over the names and CV's of any defense witness they intend to call in the penalty phase.

2. The defense is not required to turn over "notes, reports, evaluations, testing, dates, and items relied upon by the experts' for [the] penalty phase at this time. The Court will set deadlines for disclosure of that information in the future when all parties are in a position to announce ready for trial.

"Rule 3.220 also allows trial courts to exercise their **discretion** regarding the extent of disclosure and times for compliance upon a showing of good cause of materiality. See Fla. R. Crim. P. 3.220(f)(k)." Bailey v. State, 100 So. 3d213 (Fla. 3d DCA 2012). **The defense has demonstrated good cause as to why disclosure is not yet ripe.**

(emphasis added).

The State argues that the "Discovery Order" departs from the essential requirements of law because: (1) the defense failed to submit its discovery exhibit within 15 days of the furnishing by the prosecution of its discovery exhibit as required by Rule 3.220(d); (2) absent the reports, notes and raw data of the defense penalty phase experts, the State will have insufficient information upon which to select a death qualified jury; and (3) the production of the requested documents will permit a more expeditious transition to the penalty phase if a conviction is obtained. The State further suggests that any prejudice to the defense can be mitigated by redaction and subsequent in-camera review of any attorney-client or

work-product information selected by defense counsel. None of the three grounds posited by the State, and accepted by the majority in their entirety, meet the standard for intervention by this court.

As to the first ground for certiorari, it begs credulity to suggest that the failure of a party to meet a discovery deadline provides an opposing party a ticket to the court of appeal. See, e.g., State v. Randal, 947 So. 2d 609 (Fla. 3d DCA 2007). As to the second contention, the State argues it has insufficient information to properly voir dire the jury as to their predilections on the imposition of the death penalty. However, the State has not brought to this court what it does have! It would seem axiomatic that one who wishes this court to declare a miscarriage of justice based upon lack of information would have to bring forward what it does have to the decision-maker.[2] As to the State's third and final argument, its efficiency argument – that the requested documents will be helpful because they will "permit a more expeditious transition to the penalty phase if a conviction is obtained" – this claim likewise is meritless, nearly frivolous. The trial court has the inherent power to control its own docket. See generally, 88 C.J.S. Trial § 78

---

[2] The document to which we have not made privy is British Moss' Death Penalty Waiver Memorandum, prepared by his counsel and submitted to the State for the purpose of dissuading the State from seeking the death penalty. Counsel for British Moss claims the memorandum is a "comprehensive" memorandum "outlining the mitigation developed along with the forensic opinions of the defense experts . . . , paraphras[ing] them in a very distinct statement." Considering the purpose of a death penalty waiver memorandum, one might reasonably infer that little was held back.

(2016). Moreover, this case has been pending more than a decade with nary a sigh from the State.[3]

Simply stated, the trial judge in this case had two competing proposals for managing the defense discovery before her: (1) immediate release with attorney-client and work-product information redacted or (2) delay of release until such time as the jury goes out to deliberate over the guilt phase. When she read her ruling into the record, the trial judge advised the parties that she would "most likely require the disclosure when the jury goes out, if it becomes necessary, you know. So, I'm not going to require that he disclose it before [the guilt phase]." As the majority notes, the trial judge also made clear that if a conviction is obtained, "the penalty phase will not begin immediately," and she "would assure the state that you will not be in a situation where you will be ambushed." These statements by the trial judge constitute the epitome of the exercise of judicial discretion. It can hardly be argued that we have before us a judge who has committed what amounts to a miscarriage of justice, or truly egregious act or ruling, which often have been described as the essence of a departure from the essential requirements of law. See, e.g., Florida Parole Comm'n v. Taylor, 132 So. 3d 780 (Fla. 2001); Combs v. State, 436 So. 2d 93 (Fla. 1983). Indeed, a discovery management order

_____

[3] Parenthetically, it might be noted that six months elapsed between the date of the trial judge's e-mail notification to the parties of her ruling and the date the State secured the reviewable written order in this case.

14

will seldom rise to that level.  See <u>McClure v. Publix Super Markets, Inc.</u>, 125 So. 3d 998 (Fla. 4th DCA 2013)  (recognizing trial court's broad discretion with respect to timing of discovery).

The State and the majority appear to place their primary reliance on this court's recent opinion in <u>Bailey</u>, 100 So. 3d at 213, treating it as if it **holds** that pre-trial production of penalty phase discovery is non-discretionary.  The State and the majority place too much stock in <u>Bailey</u>.  <u>Bailey</u> came to us on a trial court order requiring pre-trial production of the same types of defense penalty phase expert materials – reports, testing data, notes, and evaluations – as in the case before us, with the caveat that "all requested material" would be reviewed in camera by the trial judge before release.  <u>Id.</u> at 215.  As in the case before us, the defendant argued that the court should exercise its discretion to delay the release of penalty phase discovery until after the conclusion of the guilt phase.[4] Faced with

---

[4]  This fact is illustrated in the following assertion appearing in Bailey's Petition for Certiorari or Writ of Mandamus filed in this court:

> [T]he discovery order . . . will, if enforced, cause petitioner irreparable harm; cause him to forfeit fundamental constitutional rights, including his federal and Florida constitutional rights of due process, effective assistance of counsel, and freedom from compelled self-incrimination; cause him to waive the attorney client privilege and his rights under the work product doctrine; create an unavoidable risk of prejudicing his right to present limited evidence to the sentence in this death penalty prosecution; and violate his right to procedural due process as to the provision of discovery pertinent to application of the death penalty.  At a minimum, the action of the circuit court places the defendant in the position of either waiving his sole opportunity to

competing proposals, the trial judge "adopted the State's perspective" and chose to employ the in-camera review mechanism to resolve the dispute. Id. at 218. On review, we held **not** that her way was the only legally correct way to manage the competing interests of the parties, but only that the remedy fashioned by the trial court did not rise to a departure from the essential requirements of law. Id. at 215. ("We deny Bailey's petition for writ of certiorari because the court properly used its discretion when it entered the discovery order and ordered in camera review."). We did not disapprove the defendant's alternate option, and indeed, probably did not have jurisdiction to do so. However, we did acknowledge the right of a party in a criminal case "to obtain a change in compliance times or a reduction in the scope of discovery [on] good cause shown under rules 3.220(k) and (l)." Id. at 219. We also recognized that "[T]rial courts have broad discretion over discovery matters, and discovery orders will only be overturned if there is an abuse of discretion constituting 'fatal error.'" Id. We even went so far as to say that "[t]he rationale underlying the trial court's discovery order, even if factually unsupported, ~~does not constitute an abuse of discretion." Id. The only material difference~~ present mitigating evidence following conviction of an offense subject to the death penalty or revealing to the sentencing judge information that he otherwise maintains a right to withhold from the decision maker in this case.

Petition for Certiorari or for Writ of Mandamus, Case No. 3D12-1426. See Buckley v. City of Miami Beach, 559 So. 2d 310 n. 1 (Fla. 3d DCA 1990) ("The appellate court can take judicial notice of its own files." (citations omitted)).

between <u>Bailey</u> and the case before us is that our case is the obverse, procedurally, of <u>Bailey</u>. Unless the State and the majority are of the view that the only lawful manner to resolve a dispute of the type we have before us is pre-trial production assuaged by the use of in-camera review, then one must conclude, almost a fortiori, that the way of protecting the defendant's rights proposed by the defendant in this case is a viable alternative.

The other case in which the State and majority place significant reliance is <u>Abdool v. State</u>, 53 So. 3d 208 (Fla. 2011). Again, the reliance of both the State and the majority are misplaced. In <u>Abdool</u>, the Florida Supreme Court approved conducting pertinent penalty phase discovery as to the material described in Rule 3.220, only during the penalty phase, not prior to conviction. As the State's brief on appeal in <u>Abdool</u> readily shows, the issue before the Florida Supreme Court as to provision of penalty phase discovery to the State "arose just prior to the start of the Penalty Phase that, in [<u>Abdool</u>], began the day following the guilt phase." State's Answer Brief at p. 17 n. 8, <u>Abdool</u>, 53 So. 3d at 208 (SC08-944) 2009 WL 4273334. Further, even at that point in the <u>Abdool</u> penalty phase proceedings, i.e., after the guilt phase and immediately before the penalty proceedings commenced, the State was authorized to receive only "raw data from the actual psychological and educational tests," and not the notes reports and evaluations demanded by the State in the present case. <u>Abdool</u> did not address, and had no reason to address, the

management of penalty phase discovery before the commencement of that phase of a death penalty case. Accordingly, <u>Abdool</u> does not support the decision of the majority in this case.

## CONCLUSION

The net effect of the decision of the majority in this case is to eliminate all discretion in the trial court to manage the timing of the release of the work-product materials of penalty phase expert witnesses in a case where the State has given notice that it will seek the death penalty, leaving the defendant only with the ability to seek to protect his legal and constitutional rights in the materials through an in-camera review process. That this is so appears in this statement in the majority opinion:

> Moreover, **even had Moss asked for additional time and tried to show good cause, the trial court still departed from the essential requirements of law.** In its order, the trial court found good cause to delay disclosure due to Moss' contention that the disclosure of penalty phase information was not ripe. **Florida Rule of Criminal Procedure 3.220(d) required Moss to disclose his witnesses within fifteen days of receipt of the State's discovery request. In addition, rule 3.220(j) required Moss to disclose any additional evidence "promptly" and in the same manner as required "for initial discovery" once he discovered the information.** At the renewed motion to compel hearing, Moss acknowledged that he had already decided he would be calling his experts at the penalty phase. **Thus, Moss' requirement to provide the discovery was overdue according to rule 3.220 and according to the previously cited Florida cases that hold the rule applies to the penalty phase.** <u>See</u> <u>Abdool</u>, 53 So. 3d at 219-220; <u>Bailey</u>, 100 So. 3d at 216; <u>Davis</u>, 73 So. 3d at 308; <u>Clark</u> 644 So. 2d at 556; <u>Booker</u>, 634 So. 2d at 301.

If the majority means what it says in this statement, and the judges of the criminal court of this district apply it as written, the only way for a trial judge to avoid quashal on certiorari review with respect to the production of work-product materials of penalty phase experts in death penalty cases is to order the materials produced pre-trial with an in-camera review feature, if necessary. It is certainly the procedure preferred by the majority. However, it is not the only lawful procedure. For these reasons, I respectfully dissent.